# COSTCO WHOLESALE CORPORATION TEXAS INJURY BENEFIT PLAN

## (Amended and Restated Effective March 13, 2017)

## OFFICIAL PLAN DOCUMENT

©Copyright 2017 PartnerSource
Rev. 3/13/17

# TABLE OF CONTENTS

Page

**ARTICLE I - DEFINITIONS** ...................................................................................... 1

    1.1   "Accident" ................................................................................................ 1
    1.2   "Adverse Benefit Determination" ............................................................ 1
    1.3   "Appeals Committee" .............................................................................. 2
    1.4   "Approved Facility" .................................................................................. 2
    1.5   "Approved Physician" .............................................................................. 2
    1.6   "Approved Provider" ................................................................................ 2
    1.7   "Beneficiary" ........................................................................................... 2
    1.8   "Claims Administrator" ............................................................................ 4
    1.9   "Company" ............................................................................................... 4
    1.10  "Course and Scope of Employment" ...................................................... 4
    1.11  "Covered Charge" .................................................................................. 6
    1.12  "Covered Employee" .............................................................................. 10
    1.13  "Cumulative Trauma" ............................................................................. 10
    1.14  "Custodial Care" .................................................................................... 10
    1.15  "Death Benefits" .................................................................................... 10
    1.16  "Determination" ...................................................................................... 10
    1.17  "Disabled" or "Disability" ....................................................................... 10
    1.18  "Dismemberment Benefits" .................................................................... 11
    1.19  "Emergency Care" ................................................................................. 11
    1.20  "Employee" ............................................................................................ 11
    1.21  "Employer" ............................................................................................. 11
    1.22  "First Aid" .............................................................................................. 11
    1.23  "Good Cause" ......................................................................................... 11
    1.24  "Gross Misconduct" ............................................................................... 11
    1.25  "Home Health Care" .............................................................................. 11
    1.26  "Home Health Care Agency" .................................................................. 12
    1.27  "Injury" ................................................................................................... 12
    1.28  "Maximum Benefit Limit" ........................................................................ 17
    1.29  "Maximum Rehabilitative Capacity" ....................................................... 17
    1.30  "Medical Benefits" ................................................................................. 17
    1.31  "Medically Necessary" ........................................................................... 17
    1.32  "Medical Rehabilitation Hospital" ........................................................... 17
    1.33  "Medicare" ............................................................................................. 18
    1.34  "Occupational Disease" ......................................................................... 18
    1.35  "Partial Disability" .................................................................................. 18
    1.36  "Participant" ........................................................................................... 19
    1.37  "Plan" ..................................................................................................... 19
    1.38  "Plan Administrator" ............................................................................... 19
    1.39  "Plan Year" ............................................................................................ 19
    1.40  "Post-Service Claim" ............................................................................. 19
    1.41  "Preexisting Condition" .......................................................................... 19

©Copyright 2017 PartnerSource
Rev. 3/13/17

i

Page

1.42   "Pre-Injury Pay" .......................................................................................... 19
1.43   "Pre-Service Claim" ..................................................................................... 19
1.44   "Principally Located" .................................................................................... 19
1.45   "Relevant" .................................................................................................... 20
1.46   "Representative" .......................................................................................... 20
1.47   "Skilled Nursing Care" ................................................................................. 20
1.48   "Skilled Nursing Facility" ............................................................................. 20
1.49   "Totally Disabled" or "Total Disability" ........................................................ 21
1.50   "Transitional Duty" ....................................................................................... 21
1.51   "Traumatic Event" ........................................................................................ 21
1.52   "Urgent Care Claim" .................................................................................... 21
1.53   "Usual, Customary and Reasonable" .......................................................... 22
1.54   "Wage Replacement Benefits" ..................................................................... 22

ARTICLE II - ELIGIBILITY AND NATURE OF PAYMENTS ............................................ 22

2.1    Eligibility. ..................................................................................................... 22
2.2    Nature of Payments. .................................................................................... 23

ARTICLE III - BENEFITS .............................................................................................. 23

3.1    Wage Replacement Benefits. ...................................................................... 23
3.2    Death Benefits. ............................................................................................ 25
3.3    Dismemberment Benefits............................................................................. 25
3.4    Medical Benefits. ......................................................................................... 26

ARTICLE IV - ADDITIONAL REQUIREMENTS AND LIMITATIONS ON BENEFITS .. 27

4.1    Reporting. .................................................................................................... 27
4.2    Medical Management.................................................................................... 28
4.3    Suspension or Termination of Benefits. ...................................................... 31
4.4    Voluntary Final Compromise and Settlement............................................... 31

ARTICLE V - ADMINISTRATION .................................................................................. 32

5.1    Plan Sponsor. .............................................................................................. 32
5.2    Plan Administrator. ...................................................................................... 33
5.3    Funding Policy and Method. ........................................................................ 34
5.4    Written Communications............................................................................... 34
5.5    Statement on Benefit Fraud ......................................................................... 34

ARTICLE VI - CLAIMS PROCEDURES ........................................................................ 35

6.1    Filing a Claim for Benefits............................................................................ 35
6.2    Claims Review. ............................................................................................ 36

ARTICLE VII - COORDINATION OF BENEFITS AND SUBROGATION ..................... 42

7.1    Reduction in Benefit Payments..................................................................... 42

©Copyright 2017 PartnerSource
Rev. 3/13/17

ii

7.2    Coordination of Benefits...................................................................... 43
7.3    Subrogation and Reimbursement Rights. ........................................... 44

7.4    Notice of Legal Proceedings. ............................................................. 45
7.5    Assignment of Rights. ........................................................................ 45

**ARTICLE VIII - TERMINATION AND AMENDMENT** ...................................... 46

**ARTICLE IX - GENERAL PROVISIONS** ......................................................... 46

9.1    Inability to Make Payment................................................................... 46
9.2    Spendthrift Provision.......................................................................... 46
9.3    Employment Noncontractual. ............................................................. 47
9.4    Discharge for Benefit Payments. ....................................................... 47
9.5    Participation by Affiliates.................................................................... 47
9.6    Plan Documents Control. .................................................................... 47
9.7    Construction........................................................................................ 47
9.8    Separability. ....................................................................................... 47
9.9    Applicable Law.................................................................................... 47
9.10   Application of Group Health Plan Requirements................................ 47

**APPENDIX A - ARBITRATION OF CERTAIN INJURY-RELATED DISPUTES**

**APPENDIX B - COBRA CONTINUATION COVERAGE**

**APPENDIX C - RECEIPT AND SAFETY PLEDGE**

©Copyright 2017 PartnerSource
Rev. 3/13/17

# COSTCO WHOLESALE CORPORATION TEXAS INJURY BENEFIT PLAN

This Costco Wholesale Corporation Texas Injury Benefit Plan (the "Plan") is made and executed in Issaquah, Washington by Costco Wholesale Corporation, a Washington corporation (the "Company").

## WITNESSETH THAT:

**WHEREAS**, the Company rejected coverage for its Texas employees under the Texas Workers' Compensation Act, effective as of September 1, 2007; and

**WHEREAS,** the Company established an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), named the Costco Wholesale Corporation Texas Injury Benefit Plan ("Plan"), effective as of September 1, 2007, to provide a means by which the Company and other adopting employers can protect themselves from certain liabilities as nonsubscribers to the Texas workers' compensation insurance system by providing non-fringe disability, death, dismemberment and medical benefits with respect to covered injuries sustained by Texas employees in the course and scope of employment; and

**WHEREAS,** the Company amended and restated said plan in its entirety, effective as of April 1, 2012; and

**WHEREAS,** the Company now desires to again amend and restate said plan in its entirety, effective as of March 13, 2017;

**NOW, THEREFORE,** in consideration of the premises, the Company hereby amends and restates the Plan to provide benefits and be administered in accordance with the following:

## ARTICLE I

### DEFINITIONS

**1.1** **"Accident"** means an event involving factors external to the Participant which:

    (a)    was sudden, unplanned, and unexpected; and

    (b)    occurred at a specifically identifiable time and place.

The term "Accident" shall include a Traumatic Event or known Occupational Disease exposure.

**1.2** **"Adverse Benefit Determination"** means a denial, reduction or termination of, or a failure to provide or make payment (in whole or in part) for, a Plan benefit. For example, this includes denial, reduction or termination of benefits based upon (a) a claimant's ineligibility to participate in the Plan, (b) application of any utilization review, (c) a medical service being experimental or investigational or not Medically Necessary or appropriate, or (d) the Participant no longer being Disabled.

©Copyright 2017 PartnerSource
Rev. 3/13/17

**1.3** **"Appeals Committee"** means the designated decision maker appointed by the Plan Sponsor to make Determinations on appeal of benefit claims under this Plan.

**1.4** **"Approved Facility"** means a hospital, urgent care center, Medical Rehabilitation Hospital, Skilled Nursing Facility, or other medical care facility included on an approved list of facilities adopted by the Claims Administrator.

**1.5** **"Approved Physician"** means a person duly licensed under applicable state law as a Medical Doctor or Doctor of Osteopathy and included on an approved list of physicians adopted by the Claims Administrator.

**1.6** **"Approved Provider"** means an Approved Facility, Approved Physician or other medical service or supply provider included on the approved list of medical providers adopted by the Claims Administrator.  The Claims Administrator reserves the right to add to, delete from, or otherwise amend the list of Approved Providers at any time.

**1.7** **"Beneficiary"** means the person or persons determined in the following priority:

(a)    If there is an Eligible Spouse, Death Benefits shall be paid to the Eligible Spouse.

(b)    If there is no Eligible Spouse, Death Benefits shall be paid in equal shares to the Eligible Children.

(c)    If the Participant is not survived by an Eligible Spouse or Eligible Child, Death Benefits shall be paid in equal shares to the Participant's parents (as determined in accordance with the support criteria set forth in section 152 of the Internal Revenue Code.

(d)    If the Participant is not survived by his or her parents, Death Benefits shall be paid in equal shares to the Participant's sisters and brothers (as determined in accordance with the support criteria set forth in section 152 of the Internal Revenue Code).

(e)    If the Participant is not survived by an Eligible Spouse, Eligible Child, or dependent who is a parent or sibling, Death Benefits shall be paid to the Participant's estate.

(f)    For purposes of this Section:

(1)    "Eligible Spouse" means the surviving Spouse or Domestic Partner of the deceased Participant:

(A)    "Spouse" means the person to whom the Participant is legally married, as determined for federal income tax purposes, or as determined by a court decree of common law marriage (obtained at such person's sole initiative and expense).

(B)    "Domestic Partner" means a person whose relationship with the Participant meets certain requirements as detailed in the

Declaration of Domestic Partnership and as determined and approved by the Claims Administrator.  To be a qualified domestic partnership, the Participant and Domestic Partner must:

(i)    have shared the same household for at least six consecutive months and intend to continue to do so indefinitely;

(ii)    be engaged in a committed relationship of mutual caring and support and intend to remain so indefinitely;

(iii)    share responsibility for each other's common welfare and living expenses;

(iv)    share financial interdependence;

(v)    consider themselves to be life partners;

(vi)    not be married (as defined by federal tax law) to, in a committed relationship with, or legally separated without a dissolution of marriage from, anyone else;

(vii)    both be age 18 or older and mentally competent to consent to a contract;

(viii)    not be related by blood to a degree of closeness that would prohibit legal marriage;

(ix)    not be in the relationship solely for the purpose of obtaining benefits coverage; and

(x)    not have been previously legally married to each other.

(2)    "Eligible Child" means a surviving child of the deceased Participant, whether or not the child is married, eligible for other coverage or full-time students.

(A)    Biological child, adopted child or child legally placed for adoption.  If the Participant is divorced, such child is an Eligible Child even if the Participant is not the custodial parent of such child.

(B)    Stepchild, including the Eligible Spouse's biological child, adopted child and child legally placed with him or her for adoption.

(i)    If the Eligible Spouse dies, such stepchild remains an Eligible Child as long as the Participant has been granted custody of the step child by court order, the stepchild is the Participant's dependent under the Internal Revenue Code, and the stepchild continues to live with the Participant and rely upon him or her for principal support.

©Copyright 2017 PartnerSource
Rev. 3/13/17

3

(ii)    If the Participant is no longer married to the stepchild's parent, such stepchild shall no longer be an Eligible Child.

(C)    Child for which the Participant is a legal guardian, including grandchildren, siblings, nieces of nephews for whom a court of competent jurisdiction has granted the Participant (or his or her Eligible Spouse) full, unrestricted, plenary legal guardianship for them and their estate.

(i)    If the Participant remains legal guardian until the child reaches the age of majority in Texas, the child shall continue to be an Eligible Child through age 25.

(ii)    The guardianship court order must also state the familial relationship between the person appointed as legal guardian and the child.

(iii)    A child for whom the Participant has custody, temporary guardianship, or does not have guardianship over the person and estate shall not be considered an Eligible Child.

(D)    Mentally or physically disabled child past the normal age limit (as determined in accordance with the support criteria set forth in section 152 of the Internal Revenue Code) provided the child:

(i)    was an Eligible Child and became disabled before age 26;

(ii)    is incapable of self-sustaining employment due to his or her disability;

(iii)    is chiefly dependent on the Participant for support and maintenance;

(iv)    permanently resides with the Participant;

(v)    is eligible to be claimed as the Participant's dependent for federal income tax purposes; and

(vi) is unmarried.

1.8    **"Claims Administrator"** means the individual, individuals or entity appointed by the Plan Sponsor to make initial Determinations of benefit claims under this Plan.

1.9    **"Company"** means Costco Wholesale Corporation, a Washington corporation whose principal place of business is located in Issaquah, Washington, or any successor thereto.  Company is the Plan Sponsor.

1.10    **"Course and Scope of Employment"** means an activity of any kind or character for which the Participant was hired and that has to do with, and originates in, the

©Copyright 2017 PartnerSource
Rev. 3/13/17

work, business, trade or profession of the Employer, and that is performed by a Participant in the furtherance of the affairs or business of the Employer. The term includes activities conducted on the premises of the Employer or at other locations designated by the Employer. This term does not include:

(a)    a Participant's transportation to and from his or her place of employment, unless:

(1)    the transportation is furnished as part of the Participant's employment arrangement (e.g., company car) or is paid for by the Employer (e.g., mileage expense reimbursement). This exception does not include commuting to or from the Participant's usual place of employment;

(2)    the means of the transportation are under the control of the Employer; or

(3)    the Participant is directed in his or her employment to proceed from one place to another place. Commuting to the place where the Participant begins Employer business and commuting away from the place where the Participant ceases Employer business shall not be covered if such transportation is not paid by the Employer or otherwise under Employer control.

(b)    travel by the Participant in furtherance of the affairs or business of the Employer if such travel is also in furtherance of personal or private affairs of the Participant, unless:

(1)    the travel to the place where the Injury occurred would have been made even had there been no personal or private affairs of the Participant to be furthered by the travel; and

(2)    the travel would not have been made had there been no affairs or business of the Employer to be furthered by the travel.

(c)    any injury occurring before the Participant clocks in or otherwise begins work for the Employer, while on a permitted work break or after the Participant clocks out or otherwise ceases work for the Employer, unless:

(1)    the injury occurs on the Employer's premises (or other area for which an Employer is responsible for maintenance); and

(2)    such injury is not otherwise excluded under the personal property or personal deviation exclusions referenced under subsections (d) and (e) below.

(d)    Any injury occurring as a result of personal shopping, personal errands, or similar personal deviations from the Participant's work activities.

(e)    any injury that results from personal property that does not originate in the Employer's workplace and is not specifically required for the Participant's work activities.

©Copyright 2017 PartnerSource
Rev. 3/13/17

5

**1.11  "Covered Charge"** means the cost to a Participant of a service or supply described in this Plan below, which service or supply is Medically Necessary according to the nature of the Injury when the service or supply is provided.  To be a Covered Charge, such service or supply must (1) cure or relieve the effects naturally resulting from the Injury; (2) promote recovery from the Injury; or (3) otherwise enhance the ability of the Participant to return to or retain employment following the Injury.

**Notwithstanding the foregoing, no cost will be a coverage amounts for Covered Charges described in this Plan below shall not to the extent it exceeds the Plan's Usual, Customary and Reasonable amount.**  To be a Covered Charge, a service or supply must also satisfy the other conditions and requirements of the Plan (for example the Plan's medical management requirements).

(a)    **First and Continuing Treatment.**

(1)    The first Covered Charge must be received from an Approved Provider and incurred within 14 calendar days following the date that the Participant reports the Injury (unless the Claims Administrator determines that Good Cause exists for delayed treatment); and

(2)    No further amount shall be considered a Covered Charge if the Participant fails to receive medical treatment from an Approved Provider for a period of more than 60 calendar days (unless the Claims Administrator determines that Good Cause exists for the extended break in medical treatment).

(A)    This subsection (2) shall not apply if the Claims Administrator has approved scheduled medical treatment an Approved Provider during the applicable 60-day period, even if such medical treatment occurs beyond the 60-day coverage period (for example, pre-approved hardware removal surgery).

(B)    This subsection (2) shall not apply to any Covered Charge for testing and any follow up vaccination with respect to an Injury that involves a potential occupational exposure to a bloodborne pathogen.

(b)    **Approved Provider and Pre-Authorization Requirements.** The cost of a service or supply shall be a Covered Charge only if:

(1)    treatment is furnished by or under the direction of an Approved Provider, acting within the scope of the Approved Provider's license, and pre-approved by the Claims Administrator (except when the Claims Administrator determines that prior approval was impossible due to an Emergency Care situation).  Such pre-approval may include authorization for multiple visits to an Approved Provider; or

(2)    treatment is provided as Emergency Care; and

©Copyright 2017 PartnerSource
Rev. 3/13/17

(i)      the Claims Administrator receives notification of such Emergency Care within the later of 24 hours of the Participant's receipt of such care or the Claims Administrator's next business day; and

(ii)      after receiving primary Emergency Care, subsequent treatments are provided by an Approved Provider in accordance with paragraph (1) above.

(c)      **Medical Services and Supplies That Can Be Verbally Authorized.** Subject to the restrictions and limitations set out elsewhere in this Plan, Covered Charges that can be verbally authorized shall include the cost of the following:

(1)      Approved Physician visits - at an Approved Facility (including charges for an emergency room), Approved Physician's office, or in the case of Home Health Care, at the Participant's home. Such Covered Charges shall also include (i) charges for a registered nurse, x-rays and laboratory tests conducted as part of an Approved Physician visit, and (ii) second medical opinion services requested by the Claims Administrator (in accordance with Section 4.2);

(2)      Medical supplies approved by the treating Approved Physician, including the following:

(A)      Prescription drugs (generic, unless trade name drugs are requested by an Approved Physician) and over-the-counter drugs such as analgesics prescribed by an Approved Physician;

(B)      Blood and other fluids (other than allergy, insulin, and similar drugs) injected into the circulatory system (but only to the extent not available through any refund or allowance by a blood bank or similar organization);

(C)      Oxygen and its administration;

(D)      Upon the written advice or prescription of an Approved Physician and only if obtained from an Approved Facility, rental or purchase of a wheelchair, assisted breathing apparatus, or other mechanical equipment necessary for the treatment of respiratory paralysis, and similar internal or external durable medical equipment designed primarily for therapeutic purposes;

(E)      Surgical dressings, bandages, splints, casts, crutches, syringes, needles, trusses, and braces dispensed by an Approved Physician or Approved Facility; and

(F)      Similar medical supplies approved by the Claims Administrator.

(3)      Professional ground ambulance service, or if no other means of transportation can reasonably suffice to safely deliver the individual to the

closest appropriate Approved Facility, air ambulance, regularly scheduled railroad, or airlines;

(4)     Eyeglasses or contact lenses, inclusive of professional office visit charges, provided that the eyeglasses or contact lenses are purchased from the Employer;

(5)     External hearing aids, inclusive of professional office visit charges, provided that the external hearing aids are purchased from the Employer;

(6)     Speech, occupational and physical therapy provided by an Approved Physician or a licensed speech therapist, licensed occupational therapist or licensed physical therapist.  Such services shall be subject to case management approval regarding the number of visits, the types, and amount of services provided during such visits;

(7)     Orthotics, arch supports, corrective shoes, special bras or girdles, corrective appliances, prostheses, or any similar item; and

(8)     Reasonable travel, meal and lodging expenses related to medical treatment that requires travel greater than 20 miles from the Participant's residence (one way), unless the Claims Administrator determines that Good Cause exists for travel that is 20 miles or less. Mileage will be reimbursed at the Internal Revenue Service identified "Medical Purposes" rate, as periodically updated.

(d)     **Medical Services and Supplies Requiring Specific Approval in Writing or by Electronic Notice.**  Subject to the restrictions and limitations set out elsewhere in this Plan, Covered Charges shall also include the cost of the following so long as the Claims Administrator specifically approves such charges in advance and in writing (including electronic notice):

(1)     Admission to a hospital or other Approved Facility on an inpatient or outpatient basis, including semi-private room and board, ambulatory day surgery, anesthesia and its administration, and similar services;

(2)     MRI, CAT Scan, nuclear medicine, radiology and pathology (including interpretive services) and similar testing;

(3)     Inpatient rehabilitation services provided in a Medical Rehabilitation Hospital;

(4)     Limited or temporary pain management services (for example, epidural steroid injections), but not including pain management programs;

(5)     Surgery that restores a reasonable, normal pre-Injury functioning;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(6)    Services of a dentist or licensed oral surgeon for treatment and repair of broken teeth, fractures and dislocations of the jaw, or the replacement of teeth (excluding temporomandibular junction dysfunction services);

(7)    Home Health Care (with respect to physical needs only);

(8)    Skilled Nursing Care, provided that an Approved Physician monitors the progress of the Participant at least once during each 30-day period of confinement;

(9)    Organ and tissue transplant services not otherwise covered by some form of expense payment program, excluding the donor's transportation costs, organ procurement costs and the donor's surgical expenses;

(10)    Mental health services, but only when such services are provided for mental or emotional damage or harm resulting from a Participant being the victim of, or witness to, a Traumatic Event occurring during such Participant's Course and Scope of Employment; and

(11)    Services rendered primarily for training, testing, evaluation, counseling, or educational purposes.

(e)    **Non-Covered Medical Services and Supplies.**  Any provision of this Plan to the contrary notwithstanding, Covered Charges shall not include the cost of the following:

(1)    Expenses which are determined not to be Medically Necessary;

(2)    Expenses that exceed any fee schedule adopted by the Claims Administrator or the Usual, Customary and Reasonable charge for the same or similar treatment, services or supplies;

(3)    Services or supplies to which the Participant's condition is persistently nonresponsive;

(4)    Acupuncture, hypnosis, behavior modification, pain management programs, hypnosis, biofeedback, other forms of self-care or self-help training or any related diagnostic testing, or any service or supply ancillary to any of these treatments;

(5)    Chiropractic treatment, chiropractic therapy or spinal manipulation services;

(6)    Substance abuse services;

(7)    Charges for the purchase, rental or repair of bedding, or environmental control devices, including, but not limited to, an air conditioner, humidifier, dehumidifier, or air purifier; and charges for jacuzzis, saunas,

©Copyright 2017 PartnerSource
Rev. 3/13/17

vans, or structural changes to the Participant's residence or moving expenses; or

       (8)     Charges for services performed by:

          (A)     a person who normally lives with the Participant;

          (B)     the spouse of the Participant;

          (C)     a parent of the Participant or of the Participant's spouse;

          (D)     a child of the Participant or of the Participant's spouse; or

          (E)     a brother or sister of the Participant or of the Participant's spouse.

**1.12** **"Covered Employee"** means an Employee whose employment with the Employer is Principally Located within the State of Texas.

**1.13** **"Cumulative Trauma"** means damage to the physical structure of the Participant's body occurring as a result of rapid, repetitive, physically traumatic activities that occur in the Course and Scope of Employment.

       (a)     The term "Cumulative Trauma" does not mean fatigue, soreness or general aches and pain that may have been caused or exacerbated by the Participant's Course and Scope of Employment.

       (b)     If an injury is reported to have occurred before the Participant has completed at least 120 days of continuous, active employment with an Employer, there shall be a rebuttable presumption that the injury does not meet the Plan's "Cumulative Trauma" definition. This presumption can only be overcome if the Participant establishes by a preponderance of objective medical evidence that the injury does meet the Plan's "Cumulative Trauma" definition.

**1.14** **"Custodial Care"** means care consisting of services and supplies provided to an individual in or out of an institution primarily to assist him in daily living activities, whether or not he or she is disabled, and no matter by whom recommended or furnished. Room and board and Skilled Nursing Care are not, however, considered Custodial Care if provided during confinement in an Approved Facility, and if combined with other necessary therapeutic services, under accepted medical standards, which can reasonably be expected to substantially improve the individual's medical condition which resulted from an Injury.

**1.15** **"Death Benefits"** means any benefit payable under Section 3.2.

**1.16** **"Determination"** means a decision of the Claims Administrator or Appeals Committee on whether benefits are payable to, or with respect to, a claimant under the Plan.

**1.17** **"Disabled" or "Disability"** means a Total Disability or a Partial Disability.

**1.18**    **"Dismemberment Benefits"** means any benefit payable under Section 3.3.

**1.19**    **"Emergency Care"** means a service or supply provided with respect to a medical condition manifesting itself by a sudden and unexpected onset of acute symptoms of sufficient severity that in the absence of immediate medical attention could reasonably be expected to (i) result in death, disfigurement, or permanent disability, or (ii) result in substantial impairment of any bodily organ, part, or function.

**1.20**    **"Employee"** means either -

(a)    any person who is employed in the regular business of, is under the direction and control of, and receives his or her pay by means of a salary, wage or commission directly from, the Employer and for whom the Employer files a Form W-2 with the Internal Revenue Service; or

(b)    any person determined to be a common law employee of the Employer by a court of competent jurisdiction or arbitrator.

This term does not include a leased employee, an independent contractor, a temporary staffing employee or other third-party agent.

**1.21**    **"Employer"** means the Company and any other related trade or business that participates in the Plan pursuant to Section 9.6.

**1.22**    **"First Aid"** means on-site primary medical care rendered in accordance with Employer policy.

**1.23**    **"Good Cause"** means circumstances existed that a Participant could not foresee and were beyond the Participant's control.  As part of its investigation, the Claims Administrator may request the Participant or Employer to produce evidence in order to establish the existence of good cause.  The Claims Administrator shall examine the evidence from its investigation in order to determine whether good cause exists in a particular circumstance.

**1.24**    **"Gross Misconduct"** means the Employee's gross misconduct within the meaning of Section 4980B of the Internal Revenue Code, or any successor provision of law.  Gross Misconduct means more than momentary thoughtlessness, inadvertence, or error of judgment.  It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons or Employer affected by it.

**1.25**    **"Home Health Care"** means the following care provided to the Participant on the recommendation of an Approved Physician at the Participant's home or a Home Health Care Agency:

(a)    intermittent nursing care by a(n):

(1)  Registered Nurse ("R.N.");
(2)  Licensed Practical Nurse ("L.P.N.");
(3)  Home Health Aide;
(4)  Occupational Therapist;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(5)  Physical Therapist or Licensed Physical Therapy Assistant;

(6)  Licensed Vocational Nurse ("L.V.N."); or

(7)  Licensed Speech Therapist; and

(b)  private duty nursing services of an R.N., L.V.N., L.P.N., or Certified Home Health Aid:

provided, however, that Home Health Care services shall not include services provided by persons who ordinarily live in the same household as the Participant or who are related by blood, marriage, or legal adoption to the Participant or the Participant's spouse.

**1.26  "Home Health Care Agency"** means any of the following:  (i) a home health care agency licensed by the State in which it is located, (ii) a home health agency as defined by the Social Security Administration, or (iii) an organization which is certified by the Participant's Approved Physician as an appropriate provider of Home Health Care and which: has a full-time administrator, keeps written medical records, and has at least one R.N. on staff (or the services of an R.N. available).

**1.27  "Injury"** means identifiable damage or harm to the physical structure of the body (or to the mental or emotional state with respect to a Traumatic Event) caused solely as the result of either, (i) an Accident, (ii) Cumulative Trauma, or (iii) an Occupational Disease.  Unless expressly provided for otherwise herein, such damage or harm must be incurred in, and directly and solely result from, the Course and Scope of Employment. Such Injury must also take place within the United States of America (including its territories and possessions) Puerto Rico or Canada.

(a)  **Date of Injury.**  Any provision of this Plan to the contrary notwithstanding, in order to be subject to this restated plan document, the date of such Injury must be on or after March 13, 2017.  **For all purposes of this Plan, the date of Injury shall be either (i) the date of the Accident resulting in the Injury, (ii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as Cumulative Trauma, or (iii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as an Occupational Disease.**  All Injuries sustained by a Participant that relate to  (i) an Accident, or related series of Accidents, (ii) exposure to an environmental or physical hazard that causes an Occupational Disease, or (iii) rapid, repetitious, physically traumatic activities that result in Cumulative Trauma shall be considered a single Injury for purposes of the Plan.

(b)  **Types of Non-Covered Injuries.**  Any provision of this Plan to the contrary notwithstanding, the term Injury shall not include:

(1)  any strain, degeneration, damage or harm to, or disease or condition of, the eye or musculoskeletal structure or other body part resulting from the natural results of aging, osteoarthritis, arthritis, or degenerative process, or other circumstances prescribed by the Claims Administrator which do not directly and solely result from the Participant's Course and Scope of Employment;

(2)    diagnostic labels which imply generalized musculoskeletal aches and pains in the absence of any demonstrable primary pathophysiology, such as Fibrositis, Fibromyalgia, Myofascial Pain Syndrome, Myositis, or Chronic Fatigue Syndrome;

(3)    except to the limited extent provided under the definition of "Covered Charges," any mental injury, emotional distress, mental trauma or similar injury to the mental or emotional state of a Participant, including without limitation, any physical manifestations resulting from such mental or emotional state, and any mental or emotional damage or harm that arises primarily from a personnel action, including, but not limited to, a transfer, promotion, demotion or termination of employment or other disciplinary action;

(4)    damage or harm resulting from airborne contaminants not commonly found in the Employer's normal working environment, including, but not limited to, pollen, fungi, and mold;

(5)    damage or harm resulting from job stress;

(6)    any heart attack, stroke, or aneurysm (an "attack"), unless:

(A)    the attack can be identified as:

(i)    occurring at a definite time and place; and

(ii)    proximately caused by, and arose out of, an Accident and occurring in the Course and Scope of Employment.

(B)    the preponderance of the medical evidence regarding the attack indicates that the Participant's work rather than the natural progression of a preexisting heart condition or disease was the Major Contributing Cause of the attack; and

(C)    the attack was not triggered solely by emotional or mental stress factors, unless it was precipitated by a sudden work-related stimulus;

(7)    hernia, unless such hernia:

(A)    appeared suddenly and immediately following the Injury;

(B)    was accompanied by pain; and

(C)    the preponderance of medical evidence indicates that the Participant's work was the major contributing cause of the hernia; or

(8)    any Preexisting Condition, except to the limited extent (if any) that an Approved Physician clearly confirms an identifiable and significant

©Copyright 2017 PartnerSource
Rev. 3/13/17

aggravation (incurred in the Course and Scope of Employment) of a Preexisting Condition. Subject to the medical management provisions of Section 4.2 herein, coverage for such aggravation can be provided if:

(A)    an Approved Physician identifies that, in all medical probability, the Preexisting Condition has been aggravated; and

(B)    the Preexisting Condition was not the Major Contributing Cause of the aggravation.

(c)    **Non-Covered Injury Circumstances.** Furthermore, no benefits shall be payable under the Plan if:

(1)    the Injury occurred while the Participant was in a state of intoxication, or had otherwise lost the normal use of his or her mental or physical faculties as a result of the use of a drug or alcohol. For this purpose, the Participant shall be deemed to have been in a state of intoxication at the time of the Injury if any post-accident drug or alcohol test following the Injury finds a violation of the Employer's drug and alcohol testing policy;

(2)    the Injury occurred under circumstances where the Participant's employment did not place him or her at a greater risk of Injury than the Participant would have been exposed to as a member of the general public;

(3)    the Injury is treatable by medical care that is reasonable and of a form that an ordinary prudent person in the same or similar circumstances would undergo and the Participant has not availed himself or herself of such treatment;

(4)    the Injury was caused by the Participant's willful intention and attempt to injure himself or herself or to injure another person, whether the Participant was sane or insane;

(5)    the Injury occurred while the Participant was employed in violation of any law;

(6)    the Participant's horseplay, fighting, or similar inappropriate behavior was a proximate cause of the Injury;

(7)    the Injury arose out of an act of a third person intended to injure the Participant because of personal reasons and not directed at the Participant as an Employee of, or because of his or her employment by, the Employer;

(8)    the Injury arose out of a Participant's participation in a recreational, social or athletic activity not constituting part of the Participant's Course and Scope of Employment; except where these activities are expressly required in writing by the Employer (more than an invitation or request to participate or attend);

©Copyright 2017 PartnerSource
Rev. 3/13/17

14

(9)    the Injury arose out of an act of God, unless the Participant's employment by the Employer exposes such Participant to a greater risk of Injury from an act of God than ordinarily applies to the general public;

(10)    the alleged Injury is feigned or an attempt to defraud the Employer;

(11)    the Injury was directly, or indirectly contributed by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence of the loss:

(A)    war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, mutiny, revolution, rebellion, insurrection, uprising, military or usurped power, confiscation by order of any public authority or government de jure or de facto, martial law; or

(B)    riots, strikes, or civil commotion;

This exclusion also excludes from coverage all injuries, directly or indirectly arising out of, contributed by, caused by, resulting from, or in connection with any action taken in controlling, preventing, suppressing, retaliating against or responding to (A) or (B) above;

(12)    the Injury arose out of the Participant's participation in:

(A)    any act of terrorism;

(B)    any illegal occupation or activity, or commission or attempted commission of an assault or illegal act; or

(C)    service in the military of any country or any civilian non-combatant unit serving with such forces;

(13)    the Injury arose out of any act of terrorism not "certified," as defined under the Terrorism Risk Insurance Act of 2002;

(14)    any illness arising out of the use of or caused by -

(A)    asbestos, asbestos fibers or asbestos products;

(B)    the hazardous properties, including radioactive, toxic or explosive properties, of nuclear material or biological contaminants;

(C)    lead or lead based products; or

(D)    any and all medical conditions that are associated with silica related conditions, including exposure to any and all material, which also is known as silica dust, exposures to respirable crystalline silica, exposure to silicosis, exposure to material that may cause lung cancer, pulmonary tuberculosis, and airway diseases, autoimmune

©Copyright 2017 PartnerSource
Rev. 3/13/17

disorders, chronic renal disease, or other health conditions that are associated with exposure to silica based materials.

(15)   the Injury arose or was alleged to have resulted from the following common law causes of action by a Participant:

(A)   breach of any contract of employment, whether written, oral or implied;

(B)   breach of duty of good faith and fair dealing;

(C)   breach of any non-competition agreements;

(D)   tortious interference with contractual relations;

(E)   negligent or intentional infliction of emotional distress;

(F)   negligent hiring, negligent promotion, or negligent retention; or

(G)   claims based on assault and battery, defamation, invasion of privacy, false light publicity, negligent invasion of privacy, misrepresentation, fraud, false imprisonment, false arrest, malicious prosecution, unreasonable search or retaliatory discharge.

(16)   the Injury arose out of the injured Participant's participation in the commission, or attempted commission, of any crime;

(17)   the Injury arose out of the injured Participant's ownership, operation, maintenance, loading or unloading, or entrustment to others of any aircraft.  Loading or unloading means the handling of property:

(A)   after it is moved from the place where it is accepted for movement into or onto an aircraft

(B)   while it is in or on an aircraft; or

(C)   while it is being moved from an aircraft to the place where it is finally delivered;

provided, however, loading or unloading does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft;

(18)   the Injury arose or was alleged to have resulted from employment relationships including, without limitation, claims for any type of discrimination, discharge, coercion, criticism, demotion, reassignment, discipline, defamation, harassment, humiliation, sexual harassment, claims arising under the U.S. Americans with Disabilities Act, claims arising out of the Texas Labor Code, and all other claims affecting or arising out of the employment relationship whether arising out of state or federal statutes or

©Copyright 2017 PartnerSource
Rev. 3/13/17

regulations or the common law (except as otherwise specifically covered in this Plan); and

(19)    the Participant has been untruthful or demonstrates bad faith in connection with administration of the Plan.

1.28    **"Maximum Benefit Limit"** means the total amount of all benefits payable to, or with respect to, any Participant under the Plan with respect to an Injury.  Payments made for each form of benefit shall be counted towards the Maximum Benefit Limit amount.  The Maximum Benefit Limit for this Plan is $1 million; provided, however, that the aggregate amount of the Maximum Benefit Limits with respect to claims of all Participants arising out of a single Accident, or related series of Accidents, or Occupational Disease or Cumulative Trauma exposure, shall not exceed $3 million.  Such aggregate amount may proportionally reduce the Maximum Benefit Limit applicable to each Participant involved in such Accident, related series of Accidents, or exposure, in such manner as the Claims Administrator or Appeals Committee may determine.

1.29    **"Maximum Rehabilitative Capacity"** means the earliest date after which, based upon reasonable medical probability, further material recovery from or lasting improvement to an Injury can no longer reasonably be anticipated.

1.30    **"Medical Benefits"** means any benefit payable under Section 3.4.

1.31    **"Medically Necessary"** means the services, procedures or supplies, which are:

(a)    required, recognized, and professionally accepted nationally by physicians as the usual, customary and effective means of diagnosing or treating the condition;

(b)    the most economical supplies or levels of service that are appropriate and available for the safe and effective treatment of the Participant; and

(c)    not primarily for the convenience of a Participant, the Participant's family, a physician, or a facility.

Even though a physician may have prescribed a particular treatment, such treatment may not be considered Medically Necessary within this definition or may otherwise be excluded from coverage under the terms of this Plan.

1.32    **"Medical Rehabilitation Hospital"** means an Approved Facility that:

(a)    is licensed;

(b)    provides facilities for the diagnosis and inpatient rehabilitative treatment of disease or injury with the objective of restoring physical function to the fullest extent possible.  Examples of conditions treated in a rehabilitation hospital are: amputations, spinal cord injuries, head injuries, paraplegia and quadriplegia, cerebrovascular accident, paralysis;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(c)     has facilities or a contractual agreement with another hospital in the area for emergency treatment, surgery, and any other diagnostic or therapeutic services that might be required during a confinement;

(d)     provides all normal infirmary level medical services required for the treatment of any disease or injury occurring during confinement;

(e)     has a staff of physicians specializing in physical medicine and rehabilitation directly involved in the treatment program, one of whom is present at all times during the treatment day;

(f)     is accredited as a medical inpatient rehabilitation hospital by the Joint Commission on Accreditation of Rehabilitation Facilities;

(g)     is not a place for rest, the aged, drug addicts or alcoholics, a chronic disease facility, a nursing home or sheltered workshop; and

(h)     does not provide as its primary purpose custodial care, treatment of mental disorders, special education, vocational counseling, job training, or social adjustment services.  Any identifiable charges for educational, vocational or social adjustment services are not covered under the Plan, unless otherwise provided as a Covered Charge.

**1.33**   **"Medicare"** means Title XVIII of the Social Security Act, as amended, and the regulations promulgated thereunder.

**1.34**   **"Occupational Disease"** means a condition that is (1) marked by a pronounced deviation from the normal healthy state of a Participant arising out of such Participant's assigned duties in his or her Course and Scope of Employment, and (2) causes damage or harm to the physical structure of the body.

(a)     Occupational Disease includes other diseases or infections that naturally result from the work-related disease.

(b)     Occupational Disease does not include ordinary diseases of life to which the general public is exposed outside of a Participant's assigned duties in his or her Course and Scope of Employment.

**1.35**   **"Partial Disability"** means a medically demonstrable anatomical or physiological abnormality caused by an Injury that results in the Participant being -

(a)     unable to fully perform the normal duties for which he or she was employed;

(b)     under the regular care of an Approved Physician;

(c)     released to Transitional Duty by such Approved Physician; and

(d)     working for the Employer in such a Transitional Duty position approved by the Employer.

©Copyright 2017 PartnerSource
Rev. 3/13/17

**1.36** **"Participant"** means a Covered Employee who satisfies the eligibility requirements of Article II.

**1.37** **"Plan"** means the Costco Wholesale Corporation Texas Injury Benefit Plan as herein set forth and as it may from time to time be amended.

**1.38** **"Plan Administrator"** means the Costco Benefits Committee ("Benefits Committee").

**1.39** **"Plan Year"** means a 12 calendar month period beginning each September 1 and ending the following August 31.

**1.40** **"Post-Service Claim"** means any claim for a Medical Benefit that is not a Pre-Service Claim. A Post-Service Claim shall include, but not be limited to, a determination involving (1) initial eligibility for Plan benefits, or (2) termination of ongoing eligibility for Plan benefits.

**1.41** **"Preexisting Condition"** means any Participant illness, injury, disease, impairment, or other physical or mental condition, whether or not work-related, which originated or existed prior to the day of Injury.

**1.42** **"Pre-Injury Pay"** means:

(a) for salaried Participants, regular bi-weekly salary from the Employer at the time of the Injury.

(b) for hourly Participants, the average earnings from the Employer for the 26 consecutive weeks immediately preceding the date of Injury; provided, however, that if such a Participant has worked for the Employer for less than 26 consecutive weeks, or if his or her earnings as of such date cannot be reasonably determined (in the judgment of the Claims Administrator), such 26-week average will be based upon the earnings received over such period by a similar employee of the Employer.

"Pre-Injury Pay" shall include pay for overtime, bonuses, premium pay, and Participant contributions (through salary reduction or otherwise) to a 401(k) arrangement, cafeteria plan, or other pre-tax salary deferral employee benefit plan. "Pre-Injury Pay" shall not include any benefits (including, but not limited to, Employer contributions to any employee benefit plans or matching contributions to a retirement plan) or other extraordinary remuneration.

**1.43** **"Pre-Service Claim"** means any claim for Medical Benefits related to a specific diagnostic test, procedure, hospital admission or similar medical treatment with respect to which this Plan requires Claims Administrator approval in advance of obtaining medical care. A Pre-Service Claim shall not include any determination involving (1) initial eligibility for Plan benefits, or (2) termination of ongoing eligibility for Plan benefits.

**1.44** **"Principally Located"** means the Employee is assigned by the Employer to, and regularly works at a Texas location of, the Employer. The Claims Administrator may also rely upon additional facts and circumstances to determine where the Employee is

©Copyright 2017 PartnerSource
Rev. 3/13/17

Principally Located, such as the Employee's inclusion on the Employer's Texas payroll records.

**1.45    "Relevant"** shall mean, with respect to the relation of a document, record or other information to a claimant's claim, that such document, record or other information:

(a)    was relied upon in making a benefit determination on the claimant's claim;

(b)    was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record or other information was relied upon in making the actual benefit determination;

(c)    demonstrates compliance with the Plan's administrative processes and safeguards required for making the benefit determination; or

(d)    constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

The individual records or information specific to the resolution of one claimant's claim shall not be considered relevant to another claimant's claim.

**1.46    "Representative"** means a person that a Participant authorizes in writing to act on his/her behalf.  The Plan will also recognize a legally valid power of attorney or a court or administrative agency order giving a person authority to take an act on a Participant's behalf.  In the case of an Urgent Care Claim, a physician with knowledge of the Participant's condition may act as the Participant's Representative.

**1.47    "Skilled Nursing Care"** means service provided in a Skilled Nursing Facility by a R.N., L.P.N., or licensed vocational nurse (L.V.N.), provided that the care is Medically Necessary and that the treating Approved Physician has prescribed such care.  However, no benefit will be payable under the Plan for the following expenses:

(a)    charges for food, housing, or homemaker's services;

(b)    charges for the services of a person licensed or unlicensed who ordinarily resides in the Participant's home or is a member of the family of either the Participant or the Participant's spouse;

(c)    charges for an illness or injury unrelated to the original hospital confinement; or

(d)    charges that do not follow a hospital stay or are incurred when the Participant could otherwise receive services from private duty nursing at home.

**1.48    "Skilled Nursing Facility"** means a section, ward, or wing of a hospital, or a free-standing health care facility, which:

(a)    provides room and board;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(b)    provides nursing care by or under the supervision of a nurse;

(c)    provides physical, occupational, and speech therapy furnished by the facility or by others under arrangements made by the facility;

(d)    provides medical social services;

(e)    provides drugs, biologicals, supplies, appliances and equipment ordinarily furnished for use in such a facility;

(f)    provides medical services by staff Approved Physicians;

(g)    has an agreement with a hospital for diagnostic and therapeutic services, the transfer of patients, and exchange of clinical records;

(h)    provides other services necessary to the health and care of patients that are generally provided by such facilities; and

(i)    is licensed or registered in accordance with local and state laws and regulations.

**1.49    "Totally Disabled" or "Total Disability"** means a medically demonstrable anatomical or physiological abnormality caused by an Injury that causes the Participant to be:

(a)    unable to perform the normal duties for which he or she was employed;

(b)    under the regular care of an Approved Physician; and

(c)    unable to engage in Transitional Duty or any other occupation for wage or profit.

**1.50    "Transitional Duty"** means work which is either:

(a)    a temporary accommodation that allows an Employee to perform his or her regular job; or

(b)    an alternate, temporary job that complies with the Employee's work restrictions and Employer needs.

The existence of a Transitional Duty position provided in conjunction with benefits under this Plan does not imply or create a permanent Transitional Duty position for purposes of the American with Disabilities Act ("ADA").

**1.51    "Traumatic Event"** means any act involving, or of the nature of, a violent crime or any other incident that would result in severe shock to a reasonable person.

**1.52    "Urgent Care Claim"** shall mean any claim for medical care or treatment with respect to which application of the time periods for making non-urgent Pre-Service

©Copyright 2017 PartnerSource
Rev. 3/13/17

Claim Determinations (i.e., generally, 15 days after the Claims Administrator's receipt of the claim):

(a)    could seriously jeopardize the life or health of the claimant or the ability of the claimant to regain maximum function; or

(b)    in the opinion of a physician with knowledge of the claimant's medical condition, would subject the claimant to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim.

The determination of whether a claim is an Urgent Care Claim within the meaning of subsection (a) above shall be made by the Claims Administrator applying the judgment of a prudent layperson that possesses an average knowledge of health and medicine. However, if a physician with knowledge of the claimant's medical condition determines that a claim is an Urgent Care Claim and clearly communicates such determination to the Claims Administrator, such claim shall be treated as an Urgent Care Claim for purposes of this Plan. **The characterization of a claim as an Urgent Care Claim solely impacts the timeframes and other procedures for claims processing under ARTICLE VI, and in no way changes this Plan's approved medical provider, pre-authorization, or other medical management requirements. A Participant's decision to seek treatment from an urgent care clinic or hospital emergency room does not necessarily result in an Urgent Care Claim or involve Emergency Care.**

**1.53    "Usual, Customary and Reasonable"** means a charge that is not more than the amount regularly charged by a health care provider when there is no insurance or other third party reimbursement, and is not more than the prevailing and customary charge in the locality for a like treatment, service or supply.

(a)  A "like treatment or service" is one of the same in nature and duration, requiring the same skill and performed by one of similar training and experience.

(b)  A "like supply" is one which is the same or substantially equivalent to the supply charged.

(c)  "Locality" is the city or town where the service or supply is obtained, if it is large enough so that a representative cross-section of like services or supplies can be obtained. In large cities, it may be a section or sections of the city, if the above criteria can be met. In smaller urban or rural areas, locality may have to be expanded to include surrounding areas to arrive at a representative cross-section.

**1.54    "Wage Replacement Benefits"** means any benefit payable under Section 3.1.

# ARTICLE II

## ELIGIBILITY AND NATURE OF PAYMENTS

**2.1    Eligibility.**    Each Covered Employee shall become a Participant in this Plan, as herein amended and restated, as of the time and date of his or her employment as a Covered Employee.

©Copyright 2017 PartnerSource
Rev. 3/13/17

22

(a) Except to the limited extent provided under Article III regarding the continuation of certain benefit payments, if a Participant ceases to be a Covered Employee, he or she shall thereupon cease to participate in this Plan.

(b) If such Participant is thereafter reemployed as a Covered Employee, he or she shall resume participating in the Plan as of the time and date of such reemployment.

## 2.2 Nature of Payments.

(a) **No Admission of Liability:** The Plan has been established and is maintained by the Employers to protect themselves from certain liabilities as nonsubscribers to the Texas workers' compensation insurance system. Payments made under this Plan by the Employer shall not in any way constitute an admission of liability or responsibility by the Employer for an Injury and any such liability or responsibility is specifically denied.

(b) **No Collateral Source:** Benefit payments under the Plan shall be considered to be made by the Employer of a Participant and shall not be considered payment from a "collateral source" as that term has been defined under any applicable rule, statute, judicial decision, or directive. All benefits paid under this Plan shall be offset against any alleged liability of the Employer, its officers, directors, or agents to a Participant or Participant's Beneficiaries, spouse, children, parents, guardians, heirs, executors, administrators, representatives, heirs, or assigns due to an Injury.

## ARTICLE III

## BENEFITS

Participants shall be entitled to receive under this Plan the benefits described in this Article III with respect to any Injury incurred (i) in the Course and Scope of Employment by the Employer, and (ii) during his or her participation in this Plan.

## 3.1 Wage Replacement Benefits.

**(a) Eligibility.** An Approved Physician must make the determination whether a Participant is Disabled, except to the extent that such determination is made in conjunction with Emergency Care as determined by the Claims Administrator.

**(b) Type of Wage Replacement Benefits.**

(1) **Total Disability:** From the first full day of an injured Participant's Total Disability, the Plan shall pay Wage Replacement Benefits equal to 90% of the injured Participant's Pre-Injury Pay.

(2) **Partial Disability:** From the first full day of an injured Participant's Partial Disability, the Plan shall pay Wage Replacement Benefits equal to 90% of the portion of the injured Participant's Pre-Injury Pay that the

©Copyright 2017 PartnerSource
Rev. 3/13/17

23

Participant is unable to earn (due to the Approved Physician's restrictions) while working Transitional Duty.

(3)     **Conversion of Partial Disability Benefits:**  If a Participant with a Partial Disability is released to Transitional Duty, but (i) the Employer has no Transitional Duty position available (or the Participant has exhausted available Transitional Duty), and (ii) an Approved Physician has not assigned permanent restrictions and released the Participant to any other gainful employment, then the Participant shall be considered to be Totally Disabled and Wage Replacement Benefits shall be payable in the manner specified under subsection (1) above.

(c)     **Payment Terms:**  Wage Replacement Benefits are calculated on a weekly basis, and paid on regular paydays.  Payments for portions of a week shall be prorated. Only the Participant's normal, scheduled workdays shall be considered in calculating benefits (based upon his or her employment status as of the date of Injury). Wage Replacement Benefits shall be reduced as described in Article VII.

(d)     **When Wage Replacement Benefits Cease:**  Wage Replacement Benefits shall continue until the earliest of:

(1)     the expiration of 156 weeks from the date of the Injury.  This 156-week maximum period for Wage Replacement Benefits is calculated continuously from the date of the Injury, regardless of whether or not the Participant qualifies as Disabled at all times during such period or receives Wage Replacement Benefits continuously throughout such period;

(2)     the date the Participant is certified by an Approved Physician to no longer be Disabled, without regard to whether the Participant returns to regular or Transitional Duty on that date;

(3)     the date that the Maximum Benefit Limit is met;

(4)     termination of both the Participant's status as a Covered Employee <u>and</u> all other employment of the Participant with the Employer; provided, however, that this paragraph (4) shall not apply if termination of employment is solely due to:

(A)     application of a duration limit in the Employer's leave of absence policy, or

(B)     elimination of the Participant's employment position;

(5)     the date the Participant is placed in jail, is deported or detained by or at the request of any government agency or foreign government, has left the local area for an extended period of time, or is similarly unavailable for work; provided, however, that this paragraph (5) shall operate to cease Wage Replacement Benefits only for such period of time that such Participant is unavailable for work;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(6)    the date the Participant reaches Maximum Rehabilitative Capacity or permanent restrictions have been assigned; or

(7)    the date the Participant fails to comply with the requirements specified under Section 4.3.

**3.2    Death Benefits.**  In the event that a Participant dies as the direct and sole result of, and within 365 days of, an Injury, then the Plan shall pay such Participant's Beneficiary a Death Benefit equal to $250,000; provided, however that this benefit amount shall be reduced to the extent necessary to avoid exceeding the Maximum Benefit Limit. The Death Benefit shall be paid to the Participant's Beneficiary as follows:  (i) 20% of the Death Benefit shall be paid in a lump sum cash payment as soon as administratively possible following the death of the Participant and the determination of the proper Beneficiary; and (ii) the remainder of the Death Benefit shall be paid in 35 equal monthly installments (without interest), commencing on the first day of the month following the initial lump sum payment.

(a)    Death Benefits payable under this Plan shall be in addition to Medical Benefits, Wage Replacement Benefits, and Dismemberment Benefits payable to, or with respect to, the Participant; provided, however, that no interest in future Dismemberment Benefits survives after a Participant's death which results in the payment of benefits under this Section 3.2.

(b)    In addition to the Death Benefits set forth above, the Plan shall reimburse reasonable burial expenses to any person who incurs liability therefore, up to $10,000.

**3.3    Dismemberment Benefits.**  In the event a Participant suffers a loss described in the Schedule of Losses below as the direct and sole result of, and within 365 days of, an Injury, then the Plan shall pay the Participant an amount equal to the applicable percentage from the schedule below times $250,000; provided, however, that this benefit amount shall be reduced to the extent necessary to avoid exceeding the Maximum Benefit Limit.  The Dismemberment Benefit shall be paid as follows: (i) 20% of the Dismemberment Benefit shall be paid in a lump sum cash payment as soon as administratively possible following the date of loss; and (ii) the remainder of the Dismemberment Benefit shall be paid in 35 equal monthly installments (without interest), commencing on the first day of the month following the initial lump sum payment.

## SCHEDULE OF LOSSES

| Loss of: | Benefit Amount: |
| --- | --- |
| Both Hands | 100% |
| Both Feet | 100% |
| Sight of Both Eyes | 100% |
| One Hand and One Foot | 100% |
| One Hand and Sight of One Eye | 100% |
| One Foot and Sight of One Eye | 100% |
| Speech and Hearing | 100% |
| One Hand | 50% |

©Copyright 2017 PartnerSource
Rev. 3/13/17

| | |
|---|---|
| One Foot | 50% |
| Sight of One Eye | 50% |
| Speech | 50% |
| Hearing | 50% |
| Finger or Toe (two joints) | 10% |
| Finger or Toe (one joint) | 5% |

(a)    If the Participant suffers more than one Injury described above from any one Accident, related series of Accidents, or Occupational Disease exposure or Cumulative Trauma exposure only one of the applicable Dismemberment Benefits listed above, the largest single amount, will be payable with respect to such Accident or exposure.

(b)    Total and permanent loss of use of a member of the body is the same as loss of such member.  Prior to payment of the benefit, loss of use must be certified following the care of an Approved Physician for 12 straight months from the date the loss of use began.  At the end of this time it must be medically determined by an Approved Physician that the loss of use is total and not reversible.

(c)    Loss of Hand or Foot means the complete and permanent severance through or above the wrist or ankle joint.  Loss of Sight means legally blind.  Such loss correctable by surgery or lenses will not result in payment of a Dismemberment Benefit.  Loss of Speech means the total and permanent loss of speech.  Loss of Hearing means the total and permanent loss of hearing in both ears.

(d)    The above-described loss of "Finger or Toe (two joints)" must be at or above the joint at the proximal end of the middle phalanx of the finger or toe; except that for the thumb or great toe, such loss must be at or above the metacarpophalangeal joint.  The above-described loss of "Finger or Toe (one joint)" must be at or above the joint at the distal end of the middle phalanx of the finger or toe; except that for the thumb or great toe, such loss must be at or above the joint at the distal end of the proximal phalanx.

(e)    Dismemberment Benefits shall be in addition to Wage Replacement Benefits and Medical Benefits; provided, however, that payment of Dismemberment Benefits will cease in the event of the Participant's death, which results in the payment of Death Benefits.

**3.4    Medical Benefits.**  Subject to the medical management and other provisions of this Plan, the Plan shall pay Medical Benefits to, or with respect to, a Participant for an Injury in an amount equal to all Covered Charges; provided, however, that Medical Benefits shall cease upon the earliest of:

(a)    the expiration of 156 weeks from the date of an Injury;

(b)    reaching the Maximum Benefit Limit;

(c)    involuntary termination of employment of the Participant with the Employer for Gross Misconduct;

©Copyright 2017 PartnerSource
Rev. 3/13/17

26

(d)    the Participant has not received medical treatment from an Approved Physician or Approved Facility (or scheduled treatment with an Approved Physician or Approved Facility has not been approved by the Claims Administrator) for a period of more than 60 days, unless the Claims Administrator determines that Good Cause exists; or

(e)    the date the Participant reaches Maximum Rehabilitative Capacity; or

(f)    the date the Participant fails to comply with the requirements specified under Section 4.3.


# ARTICLE IV

## ADDITIONAL REQUIREMENTS AND LIMITATIONS ON BENEFITS

**4.1    Reporting.  The Participant must report every incident or fact that the Participant believes results, or might reasonably be expected to result, in an Injury in accordance with the following requirements:**

**(a)    Notice of Injury:    The Participant (or the Participant's Representative) must notify his or her supervisor or manager as soon as reasonably possible after an Accident or Injury, no matter how minor the Accident or Injury appears to be.**

**(1)    For Injury due to an Accident, notice of the Injury must be provided within seven (7) calendar days from the date of the Accident.**

**(2)    For an actual Injury due to an Occupational Disease or Cumulative Trauma, notice of the Injury must be provided within seven (7) calendar days after the Participant is medically diagnosed with an Occupational Disease or Cumulative Trauma, or within 30 days after the Participant should have known of the Occupational Disease or Cumulative Trauma, whichever is earlier.**

**For purposes of this Section 4.1, the date of Injury shall be either (i) the date of the Accident resulting in the Injury, (ii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as an Occupational Disease, or (iii) the date that the damage or harm, or symptoms thereof, were first known to (or should have been known to) the Participant or diagnosed by an Approved Physician as Cumulative Trauma.**

**(b)    Providing Required Information:    The Participant (or the Participant's Representative) must complete an incident report form and medical authorization form by the end of the Employer's next business day after the Accident and/or Injury is reported.** These forms must be submitted to the Participant's supervisor or manager (or such other person as the Claims Administrator may specify). The Participant must provide verbal, written, or recorded statements, and provide such proof and demonstrations (relating to the Injury or any prior or subsequent damage or harm suffered by the Participant, in or

©Copyright 2017 PartnerSource
Rev. 3/13/17

27

out of the Course and Scope of Employment), in such manner and within such periods, as the Claims Administrator may from time-to-time direct.

(c)     **Good Cause:** No benefits will be payable under the Plan if notice of Injury and required information is not provided as required in this Section 4.1, unless the Claims Administrator determines that Good Cause exists that prevented the Participant from delivering such notice and required information.

**4.2     Medical Management.**

(a)     **Use of Approved Providers:** Requirements for the use of Approved Physicians and Approved Facilities are found in the "Covered Charge" definition of this Plan.   If necessary, the Claims Administrator will assist a Participant in arranging for appropriate medical treatment from an Approved Physician or Approved Facility.  A Participant does not have the right to select and have the Plan pay for his or her choice of a primary care provider or provider of specialty medical care, even if such a provider is an Approved Physician or Approved Facility.

(b)     **Medical Determinations and Treatment:**  All determinations relating to the physical condition of a Participant, upon which the continued payment of benefits is based (for example, inability to return to work or results of a prior injury), must be made by an Approved Physician. The Participant must follow fully and completely the advice of, and the course of medical treatment prescribed by, the treating Approved Physician, and must keep all scheduled appointments to fulfill the prescribed medical treatment plan.  The Claims Administrator may require that the Participant present a medical authorization and physician report form to the treating Approved Physician or Emergency Care provider at the time of primary medical treatment.  The Employer may also require that the Participant submit to any form of drug and/or alcohol testing in accordance with the Employer's the Employer's drug and alcohol testing policy.  The Claims Administrator shall have the right to require the Participant to be examined or reexamined by an Approved Physician (including, but not limited to an autopsy, where not prohibited by law) as often as the Claims Administrator determines to be reasonably necessary or appropriate during the pendency of a claim for benefits under the Plan.

(c)     **Treatment Prior to Denial:**  Any provision of this Plan to the contrary notwithstanding, the Employer may render First Aid, or the Plan may pay for Emergency Care, pay Wage Replacement Benefits or pay for a medical evaluation or treatment of a Participant, and the Plan can still make a subsequent determination that the Participant has not suffered a covered Injury or otherwise deny any or all further benefits in accordance with the provisions of this Plan.

(d)     **Medical Provider Referrals:**  If the treating Approved Physician finds it necessary to refer a Participant to another health care provider, the treating Approved Physician must notify such Participant and the Claims Administrator of his or her desire to make the referral and the objectives of such referral.  The Claims Administrator will provide advance approval or disapproval of all referrals (and may rescind any such approval at any time) based upon Medical Necessity.

(e)     **No Interference with Patient-Provider Relationship:**  Although benefits under this Plan are conditioned on a Participant's use of only Approved

Providers, a Participant remains entitled to seek any medical care he or she deems appropriate from any provider of his or her choice at his or her expense. However, expenses for such medical care shall not be payable under the Plan. The Employers, Plan Administrator, Claims Administrator, Appeals Committee, and their agents and delegates, shall not have any responsibility for the actual medical or other health care services provided by any Approved Provider or other health care provider. Health care providers are not agents of the Plan, Employer, Claims Administrator, or Appeals Committee. The Employer, Plan Administrator, Claims Administrator, and Appeals Committee are not liable or responsible for the acts or omissions of any health care provider. The actual medical treatment or rehabilitation of any Injury remains the sole prerogative and responsibility of the attending Approved Physician and other health care providers based on their independent judgment for the provision of health care.

(f)    **Professional Medical Review and Quality/Efficiency Features:** The Claims Administrator may have the discretion to assign Approved Physicians and other health care providers or firms to a Participant's case in order to (i) coordinate and expedite medical treatment of the Participant, in consultation with the treating Approved Physician, (ii) facilitate such case management, quality, and efficiency measures and procedures as the Claims Administrator deems appropriate, based upon particular facts and circumstances, and (iii) review the propriety of any and all treatment, services, and supplies, including charges for such treatment, services, and supplies. Without limiting the generality of the foregoing, the following case management, efficiency, quality control and cost containment features may be utilized under the Plan, at the direction of the Claims Administrator, to help ensure that health care services are being effectively and efficiently provided:

(1)    **Fee Schedules:** No cost shall be a Covered Charge to the extent that it exceeds the charge specified in any fee schedule approved or adopted by the Claims Administrator. In the event such charge is not listed in such a fee schedule, the charge shall not be considered a Covered Charge to the extent it exceeds the Usual, Customary and Reasonable charge;

(2)    **Alternative Health Care Facilities:** Use of Approved Facilities other than hospitals, including surgicenters, Skilled Nursing Facilities, and Home Health Care Agencies;

(3)    **Concurrent Review:** A review by designated health care personnel that utilizes Approved Physician-developed criteria and standards for determining the appropriateness of reimbursement for initial or continued treatment or hospital confinement;

(4)    **Pre-Admission Evaluation:** A review made by health care personnel to (i) determine whether each Approved Facility admission is Medically Necessary, and (ii) evaluate the number of days for an inpatient Approved Facility confinement that would be considered reasonably necessary for the care and treatment of the diagnosed Injury;

©Copyright 2017 PartnerSource
Rev. 3/13/17

(5)    **Pre-Admission Testing:**    Routine diagnostic, x-ray and laboratory examinations performed within three days of a scheduled Approved Facility confinement;

(6)    **Utilization Review:**  A review made by designated health care personnel to consider, in accordance with established medical criteria, requests from Approved Physicians for medical procedures, tests or other services prior to the provision of such requested services to determine whether they are Medically Necessary, the specific benefit of the services for the Participant, and any alternative means to provide such services;

(7)    **Nurse Case Managers:**  The Claims Administrator may assign a nurse case manager or other health care professional to monitor services provided or requested on behalf of a Participant, and to otherwise assist the Claims Administrator or the Participant with his or her return to work;

(8)    **Referral to Specialty Providers:**  The Claims Administrator may direct any Participant to an Approved Physician or other health care provider who is recognized to be a specialist with the type of condition for which the Participant may need assistance; and

(9)    **Medical Records Review or Independent Medical Evaluation:**  The Plan reserves the right to require a medical records review or independent medical evaluation from an Approved Physician selected by the Claims Administrator for purposes of determining benefits under this Plan.    The Claims Administrator will weigh the findings of the treating Approved Physician and the Approved Physician providing the second opinion and make a benefit determination under the Plan.

(g)    **Participant Right to Second Medical Opinion.  If the Participant is in disagreement with the diagnosis or treatment recommended by the Approved Physician whose opinion is accepted by the Claims Administrator ("Physician A"), then the Participant may request a second medical opinion. The Participant shall then have the right to a one-time examination at his or her own expense by another physician ("Physician B"). This examination by Physician B shall be solely for the purpose of evaluating the Participant's condition and making a treatment recommendation.**

(1)    If the diagnosis and treatment recommended by Physician B is contrary to that of Physician A, then the Claims Administrator shall designate a peer review physician who will evaluate the medical records and advise the Claims Administrator, and who may designate another Approved Physician for a further medical examination.    If the Participant refuses to be so examined, all benefits under the Plan may be suspended.

(2)    The diagnosis and/or recommended treatment of the peer review physician or this last Approved Physician will be controlling.  The fees and related expenses of the peer review physician and this last Approved Physician will be paid by the Plan (although the Participant shall have the option of paying up to one-half of such fees and expenses).

©Copyright 2017 PartnerSource
Rev. 3/13/17

**4.3    Suspension or Termination of Benefits.** The Claims Administrator may suspend or terminate the payment of ongoing Plan benefits with respect to a claim if the Participant violates one or more of the following provisions.    Unless the Claims Administrator determines that Good Cause exists, (1) a first violation shall result in a written warning and/or suspension of benefits, and (2) a second violation shall result in a termination of Plan benefits:

(a)    the Participant refuses to submit to drug and/or alcohol testing in accordance with the Employer's drug and alcohol testing policy, or refuses to provide the Employer and its designated representatives with (or access to) drug and/or alcohol testing information related to an Injury;

(b)    the Participant does not receive prior approval for all medical care (other than Emergency Care);

(c)    the Participant utilizes ongoing or concurrent medical treatment with a non-approved provider other than for Emergency Care;

(d)    the Participant refuses to submit to examination by an Approved Physician as required by the Claims Administrator with respect to any surgical procedure, diagnosis or treatment opinion rendered by the treating Approved Physician for which the Claims Administrator considers a second medical opinion advisable;

(e)    the Participant fails to provide accurate information to, or fails to follow the directions of, an Approved Physician.  Following the directions of a treating Approved Physician includes, but is not limited to, any recommended treatment, therapy, course of action, abstinence, or rehabilitation program;

(f)    the Participant fails to keep a scheduled appointment with an Approved Provider;

(g)    the Participant fails to timely inform the Participant's supervisor that he or she has been released by an Approved Physician to return to full or Transitional Duty, fails to timely report to work in accordance with such work release, or fails to perform Transitional Duty in accordance with the Approved Physician's assigned work restrictions;

(h)    the Participant fails to fully cooperate with the Claims Administrator in connection with providing required information, including but not limited to, provided relevant medical records, submitting to a recorded statement, completing required incident reports or complying with the Plan's subrogation or coordination of benefits procedures; or

(i)    the Participant fails or refuses to comply with any other provisions of the Plan or the rules and procedures adopted by the Claims Administrator for the administration of the Plan.

**4.4    Voluntary Final Compromise and Settlement.** Not earlier than the tenth business day after the date of the initial report of injury and after a Participant has received

©Copyright 2017 PartnerSource
Rev. 3/13/17

a medical evaluation from a non-emergency care physician, the Claims Administrator may notify the Participant of the Plan's desire to be released from any further known and unknown benefit (and all other injury-related claims) by such Participant and pay a final claim settlement to, or with respect to, such Participant.  If the Participant agrees to the release of liability, no additional claims will be subsequently accepted with respect to such Injury.

# ARTICLE V

## ADMINISTRATION

### 5.1    Plan Sponsor.

The Company shall be the Plan sponsor of the Plan.  The Company retains all Plan sponsor powers and functions.

(a)    The Company has delegated to its Benefits Committee certain Plan sponsor functions, including but not limited to the power to:

(1)    design, establish, amend or terminate the Plan in any manner, at any time, regardless of the health status of any Plan Participant or Beneficiary;

(2)    execute the Plan and any trust agreement or amendments thereto;

(3)    hire a Claims Administrator to design, establish, amend or terminate any network of Approved Physicians or Approved Facilities;

(4)    hire a Claims Administrator to design, establish, amend or terminate any fee schedule for the payment of Covered Charges under the Plan;

(5)    appoint an Appeals Committee to decide benefit claim appeals; and

(6)    engage and terminate the service of a medical director and other agents and professional service providers as it may deem advisable to assist it with the performance of such sponsor functions and duties.

(b)    The Benefits Committee may perform such functions or it may, in turn, delegate its performance to specific Benefits Committee members, a subcommittee, or other officers or Employees of the Company.  The Benefits Committee may exercise such Plan sponsor functions without specific written authorization of the Company or any Employer.  In performing such functions, the Benefits Committee or its designee acts in a settlor capacity, not in a fiduciary capacity.

©Copyright 2017 PartnerSource
Rev. 3/13/17

**5.2    Plan Administrator.**

(a)    **Administrator:**    The Benefits Committee shall be the Plan Administrator and named fiduciary of the Plan.  Any Benefits Committee members so appointed shall serve in such office until his or her death, resignation, or removal by the Company or the Benefits Committee. The Company may change the Benefits Committee with or without cause at any time, and may modify the membership of the Benefits Committee positions at any time and from time to time. No Benefits Committee member shall receive remuneration from the Plan for his or her services as a Benefits Committee member.  The Plan shall operate and keep its records on the basis of the Plan Year.

(b)    **Administrative Authority:**    The Plan Administrator shall have sole, exclusive and final discretionary authority to interpret and implement the provisions of the Plan documents, booklets, rules, regulations or policies with respect to benefit determinations, including, but not limited to, making all factual and legal determinations, correcting any defect, reconciling any inconsistency and supplying any omission, and making any and all determinations that may impact a claim for benefits hereunder.  The Plan Administrator shall perform all of the duties and may exercise all of the powers and discretion that the Plan Administrator deems necessary or appropriate for the proper administration of the Plan.  Any failure by the Plan Administrator to apply any provisions of this Plan to any particular situation shall not represent a waiver of the Plan Administrator's authority to apply such provisions thereafter.  Every interpretation, choice, determination or other exercise by the Plan Administrator of any power or discretion given either expressly or by implication to it shall be conclusive and binding upon all parties having or claiming to have an interest under the Plan or otherwise directly or indirectly affected by such action, without restriction.  The Plan Administrator's exercise of discretion and determinations in all matters shall be entitled to the highest deference permitted by law.  There shall be no de novo review by any arbitrator or court of any decision rendered by the Plan Administrator and any review of such decision shall be limited to determining whether the decision was so arbitrary and capricious as to be an abuse of discretion. The Plan Administrator may adopt such rules and procedures for the administration of the Plan as are consistent with the terms hereof.

To the extent the Plan sponsor or Plan Administrator has designated an Appeals Committee, that Committee has the sole, exclusive and final discretionary authority to decide appeals for benefits under the Plan, and, with respect to appeals for benefits under the Plan, has the above-described administrative authority.

(c)    **Delegation of Responsibilities:** The Plan Administrator's authority shall include, but not be limited to, the power to allocate or delegate certain fiduciary and non-fiduciary responsibilities or duties among Benefits Committee members or to Employees or third persons, including any insurer or contract administrator. Except as is otherwise provided by applicable law, those persons to whom such responsibilities and duties have not been allocated or delegated shall not be liable for any act or omission of those persons to whom such responsibilities and duties have been allocated or delegated.

Included within the discretion of the Plan Administrator is the authority to engage and terminate the services of agents and professional service providers as it may deem advisable to assist it with the performance of its duties.

**5.3     Funding Policy and Method.**  The Plan is unfunded and uninsured.  The Employer has no obligation to establish any fund or trust for the payment of benefits under this Plan.  The Employer shall have no obligation, but shall have the right, to obtain insurance contracts with one or more insurers to provide funds to the Employer that can be used, if the Employer so desires in its sole discretion, to pay all or any portion of a benefit payable under this Plan but no benefits under the Plan are guaranteed under any contract or policy of insurance.  Any such funds shall not be considered "plan assets" for purposes of ERISA and shall constitute a part of the general assets of the Employer.  Any such insurance contract shall be owned by, and (unless contrary to legal requirements adhered to by the insurer) all amounts shall be payable thereunder to, the Employer that applied for the contract, and no Participant shall have any interest in, or right to, any amounts payable under the contract.  As a condition to the receipt of benefits under this Plan, and unless otherwise prohibited by law, the Claims Administrator may require a Participant to sign a form prescribed by the Claims Administrator which will serve to assign all or a portion of any benefits payable under such an insurance contract to the Employer that applied for the contract.  If, notwithstanding the provisions of this Section 5.2, any insurance benefits are paid directly by an insurance company to a Participant or Beneficiary with respect to an Injury covered under this Plan, such payments shall be deemed to be made under this Plan by the Employer or shall otherwise be subject to the coordination of benefits provisions of Section 7.2, as determined by the Claims Administrator.

**5.4     Written Communications.**     Written communications to a Claims Administrator, the Appeals Committee, the Benefits Committee or their agents or representatives must be received before the expiration of any time period expressed in this Plan document or related documents.  The records of the Plan representatives identified in this Section 5.4 shall determine whether a communication has been received and the date of such receipt, unless a Participant can provide a United States Postal service return receipt.   The common law "mailbox rule" does not apply to determine receipt by these parties (under the mailbox rule, when a document is placed in the mail, it is considered received by the addressee on the date of mailing).

**5.5     Statement on Benefits Fraud.**  Under federal law, it is a crime to (1) attempt to defraud the Plan, (2) knowingly deceive the Plan, Claims Administrator or Appeals Committee, or (3) provide information (including filing a claim) that intentionally contains any false, incomplete or misleading information.  The punishment for violations of this law is a fine of up to $10,000.00, imprisonment for as long as five years, or both.  Willfully engaging in such activities will result in denial of a Participant's or Beneficiary's claim, disciplinary action on the part of the Company which may include termination of employment, and criminal prosecution to the full extent of the law.

©Copyright 2017 PartnerSource
Rev. 3/13/17

## ARTICLE VI

## CLAIMS PROCEDURES

**6.1    Filing a Claim for Benefits.**    A claim for Medical Benefits, Wage Replacement Benefits, or Dismemberment Benefits under the Plan shall be initiated by a Participant (or his or her Representative) by (i) complying with the notice requirements of Section 4.1, and (ii) submitting to medical treatment in accordance with Section 4.2.  A claim for Medical Benefits can also be directly submitted on the behalf of a Participant to the Claims Administrator by a health care professional.  A claim for Death Benefits under the Plan shall be initiated by a Beneficiary providing notice of entitlement thereto to the Claims Administrator within 90 days after the date of the Participant's death.

(a)    **What is a Claim:**    Each (i) medical service or supply for which payment is requested, (ii) Wage Replacement Benefit for a particular payroll period, or (iii) claim for Death Benefits or Dismemberment Benefits, shall be deemed a separate "claim" for benefits that is subject to a Determination under the Plan.  The Plan's payment of a particular claim (for example, payment for an initial medical evaluation, even on a claim that may have been reported late) does not waive or otherwise prejudice the Claims Administrator's or Appeals Committee's right to deny another particular claim or all future claims for benefits under the Plan.  As stated above, any failure by the Claims Administrator or Appeals Committee to apply any provisions of this Plan to any particular situation shall not represent a waiver of the Claims Administrator's or Appeals Committee's authority to apply such provisions thereafter.

(b)    **Who is a Claimant**:  A claimant or a claimant's Representative may file a claim for benefits under the Plan, as well as an appeal of an Adverse Benefit Determination.    References in this ARTICLE to "claimant" shall include a Participant, a medical provider seeking payment for a service or supply, a Beneficiary, or a claimant's Representative, as applicable.  The Plan shall have the right to establish reasonable procedures for determining whether and to what extent an individual has been authorized to act on behalf of a claimant.  However, with respect to an Urgent Care Claim, a physician or other health care provider licensed, accredited and certified to perform specified health services consistent with state law and with knowledge of a claimant's medical condition shall be permitted to act as the authorized Representative of the claimant.

(c)    **Information to Submit:**  Claims must include the information required by Section 4.1(b) and such other reasonable information requested by the Claims Administrator, such as medical records or a written statement from an independent service provider evidencing the date, type of services rendered, and the total cost of such services.   In addition, the Claims Administrator may require the claimant to provide a written and signed statement which provides that the Covered Charge has not been reimbursed, or is not reimbursable under any other plan or program.  Further, the Claims Administrator may also request that the claimant file all appropriate claims and requests for payment from any other plan or program maintained by the claimant prior to making any payments under this Plan.  See ARTICLE VII on "Coordination of Benefits and Subrogation".   The Claims Administrator may rely upon all such information furnished by the claimant,

including the claimant's current mailing address, and shall have no obligation or duty to locate a claimant.

(d)    **Submission of Medical Bills for Payment:**  Approved Physicians and Approved Facilities will be requested to invoice all health care-related charges directly to the Claims Administrator (or the Employer, which shall immediately transmit such invoice to the Claims Administrator).  However, in the event that a Participant receives such an invoice or pays such a charge, all requests for payment or reimbursement of Covered Charges must be filed with the Claims Administrator within 30 days from the date such expenses are incurred or, if later, the date such Participant receives an invoice from an Approved Physician, Approved Facility, or other health care provider (in the case of Emergency Care) for such expenses.

(e)    **Incomplete Claim Submissions:**  In the event that a claim, as originally submitted, is not complete, the Claims Administrator shall notify the claimant in the manner described below, and the claimant shall have the responsibility for providing the missing information.  Notwithstanding the foregoing, the period of time within which a benefit Determination must be made shall begin at the time that a claim is filed in accordance with this Plan, without regard to whether all the information necessary to make a benefit Determination accompanies the claimant's filing.  Subject to the applicable provisions of this Article VI, in the event that the period of time for a particular claim is extended due to a claimant's failure to submit information necessary to decide a claim, the period for making the benefit determination shall be suspended from the date on which the notification of the extension is sent to the claimant until the date on which the Claims Administrator receives the claimant's response to the request for additional information.

**6.2    Claims Review.**

(a)    **Notice of Initial Benefit Determination**:  The Claims Administrator shall provide notice to the claimant of its initial benefit Determination as follows:

(1)    **Urgent Care, Pre-Service Medical Claims**:  In the case of a Pre-Service Claim for Medical Benefits that is an Urgent Care Claim, the Claims Administrator shall notify the claimant of the Plan's initial benefit Determination (whether adverse or not) as soon as possible, taking into account the medical exigencies of the particular claim, but not later than 72 hours after receipt of the claim.  A Determination that such claim will be covered can be communicated to the claimant verbally, in writing, or by electronic notice; but an Adverse Benefit Determination must be provided in writing or by electronic notice as described further below.  If the claimant (i) fails to follow the Plan's procedures for filing an Urgent Care Claim, or (ii) otherwise fails to provide sufficient information to determine whether, or to what extent, benefits are covered or payable under the Plan on an Urgent Care Claim, then:

(A)    The Claims Administrator shall notify the claimant as soon as possible, but not later than 24 hours after its receipt of the claim, of the procedure to follow or the specific information necessary

to complete the claim. Notification may be oral, unless the claimant requests a written notice. This notice requirement shall only apply to the extent that such failure is a communication by a claimant that is received by the Claims Administrator, and the communication names a specific claimant, a specific medical condition or symptom, and a specific treatment, service or product for which approval is requested.

(B)    The claimant shall then be given a reasonable amount of time, taking into account the circumstances, but not less than 48 hours, to correct such failure.

(C)    The Claims Administrator shall then notify the claimant of the Plan's initial benefit Determination as soon as possible, but not later than 48 hours after the earlier of (i) the Claims Administrator's receipt of the specified information necessary to complete the claim, or (ii) the end of the time period given the claimant to provide such information.

(2)    **Concurrent Medical Care Decisions**: If the Claims Administrator has approved an ongoing course of medical treatment to be provided over a period of time or number of treatments:

(A)    The Claims Administrator shall notify the claimant of any reduction or termination by the Plan of such course of treatment. Such reduction or termination shall be considered an Adverse Benefit Determination and the Claims Administrator shall notify the claimant sufficiently in advance of the reduction or termination to allow the claimant to appeal and obtain a benefit Determination on review before the course of treatment is actually reduced or terminated.

(B)    Any request by a claimant to extend the course of treatment beyond the prescribed period of time or number of treatments previously approved by the Plan that is an Urgent Care Claim shall be decided as soon as possible, taking into account the medical exigencies of the claim. The Claims Administrator shall make an initial benefit Determination, whether adverse or not, within 24 hours after its receipt of the claim, provided that any such claim is made to the Plan at least 24 hours prior to the expiration of the prescribed period of time or number of treatments. If such claim is not made to the Plan within such 24-hour period, the request shall be treated as an Urgent Care Claim and be decided within the normal Urgent Care Claim timeframes (i.e., as soon as possible, taking into account the medical exigencies of the claim, but not later than 72 hours after receipt).

(C)    Any request by a claimant to extend the course of treatment beyond the prescribed period of time or number of treatments previously approved by the Plan that is not an Urgent Care Claim shall be treated as a new benefit claim and decided within the

©Copyright 2017 PartnerSource
Rev. 3/13/17

timeframe appropriate to the type of claim (i.e., as a Pre-Service Claim or a Post-Service Claim).

Notification of any Adverse Benefit Determination concerning a request to extend the course of treatment, whether involving an Urgent Care Claim or not, shall be made in accordance with the provisions of this Section.

(3)     **Non-Urgent Care, Pre-Service Medical Claims**:  In the case of a Pre-Service Claim for Medical Benefits that is not an Urgent Care Claim, the Claims Administrator shall notify the claimant of the Plan's initial benefit Determination (whether adverse or not) within a reasonable period of time appropriate to the medical circumstances, but not later than 15 days after its receipt of the claim.   A Determination that such claim will be covered can be communicated to the claimant verbally, in writing, or by electronic notice; but an Adverse Benefit Determination must be provided in writing or by electronic notice as described further below.

(A)     If the claimant fails to follow the Plan's procedures for filing a non-urgent care, Pre-Service Claim, then the Claims Administrator shall notify the claimant as soon as possible, but not later than 5 days after its receipt of the claim, of the procedures to follow.  Notification may be oral, unless the claimant requests a written notice.  This notice requirement shall only apply to the extent that such failure is a communication by a claimant that is received by the Claims Administrator, and the communication names a specific claimant, a specific medical condition or symptom, and a specific treatment, service or product for which approval is requested.

(B)     The Claims Administrator may extend the 15-day benefit Determination period up to an additional 15 days if it determines that, due to matters beyond the control of the Plan, an initial benefit Determination cannot be made within the first 15-day period, and notifies the claimant of the special circumstances requiring the extension and the date by which the Plan expects to render a decision.  If the extension is necessary due to a failure of the claimant to submit the information necessary to decide the claim, the extension notice shall specifically describe the required information and the claimant shall then be given at least 45 days to provide the specified information.   However, the Claims Administrator's timeframe for making a benefit Determination shall be suspended until the date upon which the claimant responds to the request for additional information.

(4)     **Post-Service Medical Benefit, Wage Replacement Benefit, Death Benefit, and Dismemberment Benefit Claims**:  In the case of a Post-Service Claim for Medical Benefits or a claim for Wage Replacement Benefits, Death Benefits or Dismemberment Benefits, the Claims Administrator shall notify the claimant of an Adverse Benefit Determination within 30 days after its receipt of the claim. The Claims Administrator may extend this period up to an additional 15 days if the Claims Administrator

©Copyright 2017 PartnerSource
Rev. 3/13/17

38

determines that an extension is necessary due to matters beyond the control of the Plan. Notice of such extension must be provided to the claimant prior to the expiration of the initial 30-day period and state (i) the special circumstances requiring the extension, and (ii) the date by which the Plan expects to render a decision. If the extension relates to a claim for Wage Replacement Benefits, such notice shall also state (i) the standards on which entitlement to benefits is based, and (ii) unresolved issues that prevent a benefit determination on the claim and what additional information is needed to resolve those issues. If additional information is requested with the extension notice, the claimant shall have 45 days from the date of the notice of extension in order to provide the specified information. However, the Claims Administrator's timeframe for making a benefit Determination shall be suspended until the date upon which the claimant responds to the request for additional information.

(b)    **Manner and Content of Adverse Benefit Determinations**:  If the initial benefit Determination is an Adverse Benefit Determination, the Claims Administrator shall provide a written or electronic notice to the claimant that satisfies the following requirements:

(1)    Any electronic notice shall satisfy ERISA regulations that specify the standards for electronic disclosure of benefit plan information;

(2)    The notice shall be written in a manner calculated to be understood by the claimant;

(3)    The notice shall set forth the specific reason or reasons for the Adverse Benefit Determination, making reference to the specific Plan provisions on which the Adverse Benefit Determination is based;

(4)    If an internal rule, guideline, protocol or other similar criterion was relied upon in making an Adverse Benefit Determination on a claim for Medical Benefits or Wage Replacement Benefits, the notice shall state that such rule, guideline, protocol or other similar criterion was relied upon in making the Adverse Benefit Determination and that a copy thereof shall be provided free of charge to the claimant upon request;

(5)    If the Adverse Benefit Determination of a Medical or Wage Replacement Benefits claim is based upon medical necessity, an experimental treatment or similar exclusion or limit, the notice shall provide either an explanation of the scientific or clinical judgment for the Adverse Benefit Determination, applying the terms of the Plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request;

(6)    The notice shall include a statement that in the case of an Adverse Benefit Determination on review by the Appeals Committee, the Plan offers no further voluntary levels of appeal and that the claimant can pursue his or her right to bring a legal action under ERISA section 502(a);

©Copyright 2017 PartnerSource
Rev. 3/13/17

(7)    If the initial Adverse Benefit Determination involves an Urgent Care Claim, the notice shall provide a description of the expedited review process applicable to such claims.   Notification of an Adverse Benefit Determination that involves an Urgent Care Claim may be provided to the claimant orally within the time frames specified above, provided that the oral notification satisfies the requirements of this subsection and that a written or electronic notice satisfying the requirements of this subsection is furnished to the claimant not later than 3 days after the oral notification;

(8)    The notice shall describe any additional materials or information necessary for the claimant to perfect the claim and explain why such material or information is necessary; and

(9)    The notice shall provide a description of the Plan's review procedures (including the time limits applicable to these review procedures).

(c)    **Appeal of Adverse Benefit Determinations:** The claimant may appeal in writing an initial Adverse Benefit Determination to the Appeals Committee within the following number of days following his or her receipt of the Adverse Benefit Determination from the Claims Administrator:

(1)    180 days for a Medical Benefits or Wage Replacement Benefits claim; or

(2)    60 days for a Death Benefit or Dismemberment Benefit claim.

If the Adverse Benefit Determination involves an Urgent Care Claim for Medical Benefits, the claimant may request orally or in writing an expedited review of the Adverse Benefit Determination and all necessary information, including the Plan's benefit Determination on review, shall be transmitted between the Plan and the claimant by telephone, facsimile or other available expeditious method.

(d)    **Appeals Committee Consideration:** When reviewing the appeal of an Adverse Benefit Determination, the Appeals Committee shall comply with the following requirements:

(1)    The claimant may submit written comments, documents, records, and other information relating to the claim for benefits, and the Appeals Committee shall take all of such information into account when reviewing such claim, without regard to whether such information was submitted or considered in the initial benefit Determination;

(2)    The claimant may receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information that is Relevant to the claimant's claim for benefits (as determined by the Appeals Committee);

(3)    The Appeals Committee review of an Adverse Benefit Determination on a claim for Medical Benefits or Wage Replacement

©Copyright 2017 PartnerSource
Rev. 3/13/17

40

Benefits shall not give any deference to the initial Adverse Benefit Determination;

(4)    If the appeal request on a Medical Benefits or Wage Replacement Benefits claim is based in whole or in part on a medical judgment, including Determinations with regard to whether a particular treatment, drug or other item is experimental, investigational or not medically necessary or appropriate, the Appeals Committee shall consult with an Approved Physician who has appropriate training and experience in the field of medicine involved in the medical judgment.  This Approved Physician shall not be an individual who was consulted in connection with the initial Adverse Benefit Determination or a subordinate of such individual;

(5)    Upon request of a claimant, the Appeals Committee shall identify the individual names of any medical or vocational experts whose advice was obtained in connection with an initial Adverse Benefit Determination, without regard to whether the advice of such experts was relied upon in making the benefit Determination.

(e)    **Timing of Notice of Benefit Determination on Review**:  The Appeals Committee shall provide notice to the claimant, as described in subsection (f) below, of the Plan's benefit Determination on review in accordance with the following timeframes:

(1)    **Urgent Care, Pre-Service Medical Claims**:  In the case of a Pre-Service Claim for Medical Benefits that is an Urgent Care Claim, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review as soon as possible, taking into account the medical exigencies of the claim, but not later than 72 hours after its receipt of the claimant's appeal request.

(2)    **Non-Urgent Care, Pre-Service Medical Claims**:  In the case of a Pre-Service Claim for Medical Benefits that is not an Urgent Care Claim, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review within a reasonable period of time appropriate to the medical circumstances, but not later than 30 days after its receipt of the appeal request.

(3)    **Post-Service Medical Benefit, Wage Replacement Benefit, Death Benefit, and Dismemberment Benefit Claims**:  In the case of a Post-Service Claim for Medical Benefits or a claim for Wage Replacement Benefits, Death Benefits or Dismemberment Benefits, the Appeals Committee shall notify the claimant of the Plan's benefit Determination on review within 45 days after its receipt of the appeal request.  The Appeals Committee may extend this period up to an additional 45 days if the Appeals Committee determines that an extension is necessary due to matters beyond the control of the Plan.  Written or electronic notification of an extension must be provided to the claimant prior to the expiration of the initial 45-day period and indicate the special circumstances requiring the extension and the date by which the Plan expects to render a decision.

©Copyright 2017 PartnerSource
Rev. 3/13/17

41

(f)        **Manner and Content of Benefit Determination on Review**:  The Appeals Committee shall provide a claimant with written or electronic notification of the Plan's benefit Determination on review.  If the decision on review is an Adverse Benefit Determination, the notice must satisfy all the requirements set forth in subsection (b)(1) through (6) above, and also state that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information Relevant to the claimant's claim for Plan benefits.

(g)        **Extension of Time Frames Allowed by Law or Agreement**:  In the event that ERISA rules and regulations permit additional time for decisions or actions by the Claims Administrator or Appeals Committee, the Claims Administrator or Appeals Committee may exercise their discretion to utilize (but not exceed) those extended time frames; provided, however, that this discretion shall only be exercised when necessary to provide a full and fair review of a claimant's right to benefits in accordance with the terms of this Plan (e.g., additional time needed to obtain an appointment and results of a medical examination).  Upon request by the Plan, a claimant may also voluntarily agree to an extension or further extension of any time period within which the Plan must decide a claim.

(h)        **Exhaustion of Administrative Remedies:**  No legal action can be brought by or with respect to a Participant to recover benefits under the Plan before the foregoing claim procedures have been exhausted.  Every ERISA right of action by any Participant, former Participant, a Participant's Representative, Beneficiary, or the Participant's estate against the Plan, or any Plan fiduciary, must be brought no later than one (1) year from the date that the foregoing claim procedures have been exhausted (due to claimant inaction, claimant receipt of a final Adverse Benefit Determination on appeal, or otherwise).  Unless contrary to applicable law, any ERISA right of action or other legal action challenging a Plan decision shall be brought in the United States District Court for the Northern District of Texas, Dallas Division.

# ARTICLE VII

# COORDINATION OF BENEFITS AND SUBROGATION

**7.1     Reduction in Benefit Payments.**  Benefit payments under this Plan shall be reduced by:

(a)      the amount of any applicable federal or state income, employment, or other taxes that are required by law to be withheld;

(b)      with respect to Wage Replacement Benefits, the Participant's earnings from any employer after disability begins, amounts legally garnished, and Participant contributions (through salary reduction or otherwise) to a 401(k) or a 403(b) plan, cafeteria plan, or other pre-tax salary deferral employee benefit plan; and

(c)      except as otherwise specified under Section 7.2(c) and 7.2(d), any amount paid or available with respect to the Participant's Injury under the following:

workers' compensation law, unemployment compensation law, disabilities benefits law, or other similar law.

**7.2    Coordination of Benefits.**  If a Participant is covered under this Plan and one or more other benefit plans, then (unless otherwise subject to Section 7.3) any Medical Benefits and Wage Replacement Benefits payable under this Plan will be either regular benefits or reduced benefits that, when added to the benefits of the other plan(s), will not exceed 100% of the amount described herein.  The purpose of this provision is to prevent duplicate payments under plans that would exceed 100% of the benefits described in this Plan.  In the coordination of benefits, one of the plans will be designated as the primary plan and the other plans will be designated as secondary.  The primary plan will pay its full benefits first, then the secondary plan(s) will pay, but payments will be coordinated so that the total from all plans will not be more than the benefits described in this Plan.  **Nothing in this Article VII shall be construed to coordinate benefits under this Plan with benefits under a group health plan.**

(a)    Except as otherwise specified above with respect to group health plans, "other benefit plans" shall mean any health or disability-type benefits provided under (1) any individual, group, blanket or franchise plan, (2) other prepaid coverage under service plan contracts, or under group or individual plans, policies or a practice, (3) uninsured arrangements of group or group-type coverage, (4) labor-management trusteed plans, labor organization plans, employer organization plans, or employee benefit organization plans, (5) benefits coverage in a group, group-type and individual policy or policies of automobile coverage (including, but not limited to medical payment coverage, personal injury protection coverage, uninsured motorists coverage and underinsured motorists coverage, and (6) any other group-type contracts – that is, those contracts which are not available to the general public and can be obtained and maintained only because of membership in or connection with a particular organization or group.

(b)    Except as specified under Section 7.2(c) and 7.2(d), if a person is covered by more than one plan to which this coordination of benefits provision applies, then the following rules will determine which plan will be primary:

(1)    With respect to health benefits only, when only one of the plans has a coordination of benefits provision, then the plan without such a provision will be the primary plan;

(2)    The plan under which the person is covered other than as a dependent (for example, active employee, former employee, inactive employee, COBRA participant or retiree) will be the primary plan over a plan which covers the person as a dependent;

(3)    The plan under which the person is covered as an active employee will be the primary plan over a plan which covers the person as former employee, inactive employee, COBRA participant or retiree;

(4)    If none of these rules establish an order of benefit determination, then the plan that has covered the person for the longer period of time will be the primary plan.

©Copyright 2017 PartnerSource
Rev. 3/13/17

(c)    Consistent with Medicare Secondary Payer rules for no-fault and/or liability forms of coverage, Medical Benefits payable under this Plan to or with respect to any Participant who is in "current employment status" as defined for purposes of Medicare, and who is eligible for benefits under Medicare, shall be primary and shall not be reduced by the amount of benefits payable to or with respect to such Participant under Medicare, which will be considered the secondary plan.

(d)    The fact that a Participant is eligible for or provided (1) medical assistance under a state plan, or (2) disability benefits, survivor benefits or retirement benefits under the Social Security Act, will not be taken into account in making payments under the Plan.

(e)    The Participant must notify the Claims Administrator of such other benefit plans and cooperate with the Claims Administrator in (1) furnishing copies of other policies, coverages or plans which may be applicable to the Injury, and in (2) completing and returning to such Claims Administrator any questionnaire or forms inquiring about, or assigning rights to recover under, other policies, coverages or plans which may cover or be applicable to such Participant.

**7.3    Subrogation and Reimbursement Rights.**  For purposes of Section 7.3, 7.4, and 7.5 of this Plan, the term "Payee" means a Participant or Beneficiary or their family members, heirs, estate, or other Representative (in their individual or representative capacity), singularly or collectively as the context may require to give the Plan the broadest possible rights of recovery.

(a)    **Right of Subrogation:**  If a Payee becomes entitled to or directly or indirectly receives Plan benefits for any Injury caused by the negligence or other act or omission of any person or organization (including, but not limited to, the Employer), and is (or later becomes) entitled to or otherwise collects any damages or other compensation in connection with such Injury (including, but not limited to, damages for negligence, survival, wrongful death or other legal or equitable action), whether by insurance, litigation, settlement or other proceeding, the Payee shall automatically be required to (i) subrogate his, her or its right to and reimburse the Plan out of said damages or other compensation to the extent of the Plan benefits paid to, or with respect to, the Payee  and (ii) subrogate his, her or its right to and reimburse the Plan out of said damages or other compensation for all medical management, investigation, attorneys' fees, costs of recovery, and other expenses related to the claim for benefits (including any subrogation proceeding).  The subrogation rights of this Plan even apply with respect to a Payee who is (or later becomes) entitled to or otherwise collects any damages or other compensation in connection with such Injury but has not and will not receive any Plan benefits if such person's claim for damages or other compensation is dependent on whether the Participant had or has a valid claim against a third party.

(b)    **Written Confirmation:**  Upon request of the Plan, the Payee shall provide the Plan written confirmation of this subrogation right, including execution of any assignment, lien form or other document requested by the Claims Administrator to enable the Plan to recover such Plan benefits and related expenses.  Any failure of a Payee to give written confirmation of the Plan's subrogation rights does not

©Copyright 2017 PartnerSource
Rev. 3/13/17

44

adversely affect its rights of subrogation because the Plan's right of subrogation arises automatically once payment under this Plan is made to or on behalf of the Payee.

(c)    **Right to Reimbursement:**  If (i) a Payee fails, refuses or neglects to reimburse the Plan or otherwise comply with the provisions of this Section, or (ii) payments are made under the Plan based on fraudulent information or otherwise in excess of the amount necessary to satisfy the provisions of the Plan, then the Plan shall still have all remedies and rights of recovery specified herein.  The Plan shall also have the right to terminate or suspend benefit payments and/or recover the reimbursement of all amounts above due to the Plan by withholding, offsetting and recovering such amounts out of any future Plan benefits or amounts otherwise due from the Plan to or with respect to such Payee.

(d)    **Right of Recovery:**  The Plan shall have the first lien recovery against any benefits paid or to be paid by the Plan. The Plan shall also have the right to bring a lawsuit and assert a constructive trust or other interest against any and all persons that have assets to which the Plan can claim rights.  The Plan has the right of first recovery from any judgment, settlement or other payment, regardless of whether the Payee has been "made whole."

(e)    **Attorney's Fees and Expenses:**  The Plan's subrogation rights and first lien will not be reduced by attorneys' fees or expenses incurred by any party in pursuing recovery against a third party and the "common fund" doctrine shall not apply.  Any attorneys' fees and/or expenses incurred by or at the request of the Payee or his, her or its attorneys in a third party or other action shall be the sole responsibility of such party.

**7.4    Notice of Legal Proceedings.**  A Payee (whether or not such person has received or may in the future directly or indirectly receive Plan benefits) shall provide the Claims Administrator with prior written notice of the involvement of such party in any lawsuit, settlement discussion or other proceeding (for negligence, wrongful death, survival or other cause of action), one of the principal purposes of which is recovering, from any person or organization, damages or other compensation in any way related to any Injury for which Plan benefits have been or may in the future be paid.  The Plan shall have the right to intervene for itself and on behalf of a Payee in any such lawsuit, settlement discussion or other proceeding.  If a Payee neglects, fails or refuses to seek a recovery from any person or organization for any Injury caused by the negligence or other act or omission of such person or organization, the Plan shall have the right to institute a lawsuit or other proceeding or do any other act that in the opinion of the Claims Administrator may be necessary or desirable to recover the Plan benefits paid (and to be paid in the future), plus all medical management, investigation, attorneys' fees, costs of recovery, and other expenses incurred by the Plan.

**7.5    Assignment of Rights.**  By participating in this Plan, a Participant obligates himself or herself, as well as all other Payees (in both their individual and representative capacities), to the provisions of this Plan, including, without limitation, Sections 7.3, 7.4, and 7.5 hereof.  Upon the request of the Claims Administrator, a Payee shall assign to the Plan the right to intervene in or institute any lawsuit, settlement discussion, or other proceeding described in Sections 7.3 and/or 7.4, and to use the name of such party for

©Copyright 2017 PartnerSource
Rev. 3/13/17

such purpose.  The Plan shall have the right to select legal counsel of its own choice and such counsel shall have complete control over the conduct of any such lawsuit, settlement discussion, or other proceeding without the consent or participation of any such Payee. Whenever the Plan shall intervene in or institute any lawsuit or other proceeding as permitted by the provisions of this Section, the Plan may pursue same to a final determination and the Plan expressly reserves the right to appeal from any adverse judgment or decision.  The Payee shall give the Plan all reasonable aid in any such lawsuit, settlement discussion, or other proceeding in effecting settlement, in securing evidence, in obtaining witnesses, or as may otherwise be requested by the Claims Administrator.  The Payee shall release the Plan, the Employers, the Plan Administrator, the Claims Administrator, the Appeals Committee, and their respective directors, officers, agents, consultants, attorneys, and employees from all claims, causes of action, damages and liabilities of whatever kind or character that may directly or indirectly arise out of the pursuit or handling by the Plan of any such lawsuit, settlement discussion or other proceeding.

## ARTICLE VIII

## TERMINATION AND AMENDMENT

The Company shall have the right and power at any time and from time to time to amend this Plan, in whole or in part, on behalf of all Employers, and at any time to terminate this Plan or any Employer's participation hereunder; provided, however, that no such amendment or termination shall reduce the amount of any benefit payable to, or with respect to, a Participant under the Plan in connection with an Injury occurring prior to the date of such amendment or termination.  Any such amendment or termination shall be by resolution of the Benefits Committee or its delegee.

## ARTICLE IX

## GENERAL PROVISIONS

**9.1    Inability to Make Payment.**  In the event an individual becomes entitled to a payment under this Plan and such payment cannot be made (i) because the address provided by the individual is incorrect, (ii) because the individual fails to respond to a notice sent to the address provided by the individual, (iii) because of conflicting claims to such payment, or (iv) because of any other reason, the amount of such payment, if and when made, shall be the amount determined under the provisions of ARTICLE III without interest thereon. If, within two years after any amount becomes payable hereunder to an individual, the same shall not have been claimed, provided the Claims Administrator has exercised reasonable diligence in attempting to make such payment, the amount thereof shall be forfeited and shall cease to be a liability of this Plan.

**9.2    Spendthrift Provision.**  Except as expressly provided for in this Plan, no right or interest of any Participant or Beneficiary under this Plan may be assigned, transferred or alienated, in whole or in part, either directly or by operation of law, and no such right or interest shall be liable for or subject to any debt, obligation or liability of such Participant or Beneficiary.

©Copyright 2017 PartnerSource
Rev. 3/13/17

**9.3** **Employment Noncontractual.**  The establishment of this Plan shall not enlarge or otherwise affect an Employee's "at will" employment by the Employer, and the Employer may terminate the employment of any Employee at any time and/or modify the Employee's working relationship as desired, at-will for any or no reason (with or without cause), as freely and with the same effect as if this Plan had not been established.

**9.4** **Discharge for Benefit Payments.**  All benefit obligations under this Plan with respect to an Injury must be incurred during the 156-week coverage period for that Injury and all payments of benefits under this Plan must be made not later than 90 days following expiration of that 156-week coverage period.  The Employer shall be under no obligation to pay any benefits which, in the exercise of reasonable diligence, cannot be finally determined and paid by the Claims Administrator within such timeframe. If the Claims Administrator determines that a Participant is unable to apply a benefit payment under this Plan in furtherance of his or her own interest and advantage, the Claims Administrator may direct all or any portion of such payment to be made (i) to the guardian of the person, managing conservator or guardian of the estate of the Participant, (ii) to a relative or friend of the Participant, to be expended for the Participant's benefit, (iii) to a custodian for the Participant under any Uniform Gifts to Minors Act, or (iv) to a trust established for the Participant.  The Claims Administrator shall not be obligated to see to the proper application or expenditure of any payment so made.  Any payment made pursuant to the power herein conferred upon the Claims Administrator or Appeals Committee shall operate as a complete discharge of all obligations of the Plan and the Claims Administrator and Appeals Committee, to the extent of the payments so made.

**9.5** **Participation by Affiliates.** With the consent of the Company, any incorporated or unincorporated trade or business which is a member of a control group (within the meaning of Section 3(40) of ERISA) with respect to which the Company is also a member may adopt and become an Employer under this Plan.

**9.6** **Plan Documents Control.**  This written Plan document constitutes the entire Plan, and no oral or written representation or promise concerning the Plan which is inconsistent with the provisions of this Plan document shall have any effect.   The provisions of this Plan document shall be the sole source of all legally enforceable rights with respect to the benefits herein provided.

**9.7** **Construction.**  The titles to the Articles and the headings of the Sections in this Plan are placed herein for convenience of reference only and in case of any conflict the text of this instrument, rather than such titles or headings, shall control.

**9.8** **Separability.**  If for any reason any provision of this Plan is determined to be invalid or contrary to applicable law, such invalidity shall not impair the operation of or otherwise affect the remaining provisions of this Plan.

**9.9** **Applicable Law.**  This Plan shall be governed and construed in accordance with the provisions of ERISA and, except where superseded by federal law, the laws of the State of Texas.

**9.10** **Application of Group Health Plan Requirements.**  This Plan provides "excepted benefits," as defined in ERISA Section 733(c)(1), Code Section 9832(c)(1), and Title 42 of the United States Code Section 300gg-91(c)(1).  Accordingly, this Plan is

©Copyright 2017 PartnerSource
Rev. 3/13/17

exempt from the standards, rules, regulations and other requirements of the Health Insurance Portability and Accountability Act, the Patient Protection and Affordable Care Act and other statutes, rules and regulations that exempt excepted benefits from their application.

**IN WITNESS WHEREOF**, this Plan has been executed by the Company this _____ day of_____, 2017, to be effective as of March 13, 2017.

**COSTCO WHOLESALE CORPORATION**

By: _____
     (Signature and Title)

By: _____
     (Signature and Title)

©Copyright 2017 PartnerSource
Rev. 3/13/17

48

## APPENDIX A

### ARBITRATION OF CERTAIN INJURY-RELATED DISPUTES

### ARBITRATION POLICY OVERVIEW

The Employer hereby adopts a mandatory company policy requiring that certain claims or disputes must be submitted to final and binding arbitration under this arbitration requirement ("Policy").  **This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.**

**(a)  Definitions:**

(1)  **"Company"** means Costco Wholesale Corporation, a Washington Corporation whose principal place of business is located in Issaquah, Washington, or any successor thereto.

(2)  **"Employee"** means either:

(a)  any person whose employment with the Employer is principally located within the State of Texas is under the direction and control of, and receives his or her pay by means of a salary, wage or commission directly from, an Employer and for whom an Employer files a Form W-2 with the Internal Revenue Service; or

(b)  determined to be a common law employee of an Employer by a court of competent jurisdiction or arbitrator.

This term does not include a leased employee, temporary staffing employee, an independent contractor or other third-party agent.

(3)  **"Employer"** means the Company and any incorporated or unincorporated trade or business that (1) is a member of a control group (with the meaning of Section 3(40) of ERISA) with respect to which the Company is also a member, and (2) maintains Employees whose employment with the Employer is principally located within the State of Texas.

(4)  **"Plan"** means the Costco Wholesale Corporation Texas Injury Benefit Plan as herein set forth and as it may from time to time be amended.

**(b)  Covered Claims:**

(1)  any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in a Receipt, Safety Pledge and Arbitration Acknowledgement form, an Employee training program, or this Policy; and

© Copyright 2017 PartnerSource
Rev. 3/13/17

1

(2)    any legal or equitable claim by or with respect to an Employee for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; claims for intentional acts, assault, battery, negligent hiring/ training/ supervision/ retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this Policy).

(3)    The determination of whether a claim is covered by this Policy.

This arbitration requirement includes all claims listed above that an Employee has now or in the future against an Employer, its officers, directors, owners, Employee's, representatives, agents, subsidiaries, affiliates, successors, or assigns (even if such claim relates to matters occurring before the effective date of this Policy, if the Employee has not filed a legal action in any court or with any governmental agency prior to such date).

**(c)    Excluded Claims: This arbitration requirement does not, however, include the following claims:**

(1)    **any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan.**  If an Employee wishes to appeal a denial of benefits under the Plan, such Employee must follow the process described in ARTICLE VI of the Plan.  After exhausting the appeal process outlined in ARTICLE VI of the Plan, any action challenging a Plan decision, or any other ERISA right of action, must be brought in the United States District Court for the Northern District of Texas, Dallas Division.

(2)    Any claim filed with an administrative agency in accordance with applicable law.

(3)    Any criminal act or complaint, including but not limited to, restitution by an Employee for a criminal act for which he or she has been found guilty or no contest, or if the criminal proceedings have been resolved by deferred adjudication.

**(d)    Covered Parties:** Neither an Employee nor an Employer shall be entitled to a bench or jury trial on any claim covered by this Policy.  This Policy applies to all Employees without regard to whether they have completed and signed a Receipt, Safety Pledge and Arbitration Acknowledgement form or similar written receipt.  These provisions also apply to any claims that may be brought by an Employee's spouse, children, parents, beneficiaries,

©Copyright 2017 PartnerSource
Rev. 3/13/17

2

Representatives, executors, administrators, guardians, heirs or assigns (including, but not limited to, any survival or wrongful-death claims).

## ARBITRATION PROCESS

(a)   **Required Notice of All Claims:**  When a party seeks arbitration, such party must give written notice of any claim to the American Arbitration Association **and** the other party within the applicable statute of limitations for such claim. The day the act complained of occurred will be counted for purposes of determining the applicable period.  If such notice is not given timely and in the manner described above, the claim shall be void and deemed waived. **The filing of a lawsuit will not toll the running of the applicable statute of limitations to request arbitration of a claim, nor will the doctrine of equitable tolling apply to extend the limitations period for the party to request arbitration.**

(1)   The party requesting arbitration must send written notice in triplicate to the American Arbitration Association, Attention: Regional Claims Administrator, at 13455 Noel Road, Two Galleria Tower, Suite 1750, Dallas, Texas, 75240-6620.   If an Employee wishes to invoke arbitration, the Employee must also send written notice to the Employer, in care of Rich Olin, General Counsel, Costco Wholesale Corporation, 999 Lake Drive, Issaquah, Washington 98027 (or such other person or address as the Employer may specify).   If the Employer wishes to invoke arbitration, the Employer must also give written notice to the Employee at the last address recorded in the Employee's personnel file.

(2)   The party requesting arbitration must specifically identify and describe in the written notice all claims asserted and the facts on which the claims are based.   This written notice shall be sent certified or registered mail, return receipt requested. The responding party shall have the ability to file special exceptions with the arbitrator on the basis that the written notice does not satisfy the requirements of this Policy.

(3)   If after expiration of the applicable statute of limitation (i) a court has ordered the parties to arbitrate, and (ii) such court or arbitrator for whatever reason has determined that the claim is not void and deemed waived, then the party that is compelled to arbitrate must initiate a claim for arbitration regarding such claim with the AAA and serve the other party within 30 days of such order or the party's claim shall be void and deemed waived.   Such notice must be given in the manner described above.

(4)   The identification of the American Arbitration Association as the designated arbitration provider is not integral to this Policy so as to render the Policy null and void.   If for any reason the American Arbitration Association is no longer available for the administration of this Policy, the Employee requesting arbitration shall provide written notice to Rich Olin, General Counsel, Costco Wholesale Corporation,

999 Lake Drive, Issaquah, Washington 98027 and obtain the proper notice of arbitration forms for forwarding to the independent arbitration firm approved by the Company.

**(b)** **Arbitration Filing Fees:** The Employee shall pay a nonrefundable arbitration filing fee equal to the standard employee filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. The Employee's filing fee must be paid when he or she submits a request for arbitration (or, if this process is challenged by an Employee, when arbitration is compelled by court order).  The Employer shall pay a nonrefundable arbitration filing fee equal to the standard employer filing fee specified under then-current AAA Employment Arbitration Rules and Mediation Procedures. The Employer will also pay the arbitrator's entire fee and any other AAA administrative expenses; provided, however, that an Employee may elect to also pay up to one-half of these fees and expenses.

(1)   If the arbitrator finds completely in favor of the Employee on all claims, the Employer will reimburse the Employee for his or her share of the filing fee.

(2)   If the Employer initiates the arbitration (by means other than a motion in court to compel arbitration), the Employee will pay no portion of the AAA filing fees.

**(c)** **Choosing an Arbitrator:**  Once the AAA receives a request for arbitration and all administrative fees are paid, the AAA will send both parties a list of neutral arbitrator candidates who have been pre-screened by the AAA for potential conflicts of interest.  **Unless otherwise agreed to in writing by the parties, the arbitrator selected by the parties in accordance with those rules (1) shall be an attorney licensed to practice in the State of Texas with experience in personal injury litigation, and (2) shall be selected from the AAA Northern Panel of Texas arbitrators.**  Any disclosures that are mandated by applicable law regarding the arbitrator candidates will be made at this time, and the AAA will also provide both parties with a brief description of the background and experience of each arbitrator candidate.

(1)   Either party may challenge an arbitrator candidate for cause, and the AAA will rule on such challenge.  If a challenge for cause is upheld, a replacement name will be given to both parties.

(2)   Following any challenges for cause, either party may strike three names from the final list and then rank the remaining arbitrator candidates in order of preference.  If there is more than one candidate remaining after the strikes and the parties cannot agree on one of the remaining arbitrators, the candidate with the highest total ranking will become the arbitrator.  If this process does not result in selection of an arbitrator, the AAA will designate the arbitrator.

©Copyright 2017 PartnerSource
Rev. 3/13/17

4

(3)    If a party to the arbitration fails to return a final list to the AAA within the timeframe specified by the AAA Rules, the AAA will consider all names on the list as being acceptable to that party.

(4)    If the arbitrator so selected becomes unable to serve for any reason, the parties shall again go through the same selection process.

**(d)    Arbitrator Authority:**    The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement including, but not limited to, any claim that all or any part of this agreement is void or voidable.

(1)    **At any time, the arbitrator will have the authority to consider and grant motions consistent with the Texas Rules of Civil Procedure (or Federal Rules of Civil Procedure, if applicable), including, but not limited to, motions for summary judgment.**

(2)    The arbitrator is authorized only to rule on the claims set forth in the original written notice, any counterclaim(s), and the answer(s) made to such claims and counterclaims.  The arbitrator is not authorized to modify the powers granted to him or her under this Policy or to make any award merely on the basis of what he or she determined to be just or fair.

(3)    **The arbitrator shall also not commingle the standards for state law determinations and remedies (for example negligence claims and special damage awards) with the standards for federal law determinations and remedies that may or may not be subject to this Policy (for example, ERISA benefit eligibility and ERISA damage awards are not subject to arbitration).**

**(e)    Arbitration Procedures:**    Any arbitration under this Policy will be administered by the American Arbitration Association ("AAA") under its then-current Employment Arbitration Rules and Mediation Procedures.

(1)    **Preliminary Hearing:** After arbitrator selection, a preliminary hearing may be scheduled upon request by the parties, the AAA or the selected arbitrator.  At this hearing, the arbitrator will work with the parties to narrow the issues, establish a discovery schedule, arrange for an acceptable procedure for the filing of any motions and arrange for the earliest and most efficient arbitration hearing possible for the issues in dispute.

(2)    **Discovery:** The arbitrator will have discretion to order pre-hearing exchange of information, including but not limited to, document production, information requests, depositions, subpoenas, and summaries of expected testimony.  The arbitrator can issue protective orders as he or she deems necessary or appropriate to protect the privacy or other legal rights of the parties and/or witnesses.

    (3)   **Recording the Hearing:** Either party may arrange for, and pay the cost of, a court reporter to provide a stenographic record of the proceedings.  Otherwise, the arbitration hearing will not be recorded.

    (4)   **Attorney Fees:** Each party shall be responsible for their own attorney's fees, if any.  However, if any party prevails on a statutory claim which allows the prevailing party to be awarded attorney's fees, or if there is a written agreement providing for such fees, the arbitrator may award reasonable attorney's fees to the prevailing party.

    (5)   **Other Arbitration Expenses:**  Each party shall also be responsible for any costs for witnesses called, any costs to produce evidence requested by the other party, deposition costs, and transcripts.  The Employer will pay fees and expenses charged by the arbitrator or the AAA for the arbitration; however, the Employee may elect to pay up to one-half of these fees and expenses if requested.

    (6)   **Failure to Attend:**  If an Employee or the Employer fail to attend a scheduled arbitration hearing without Good Cause (as determined by the arbitrator), any claim brought by the party failing to attend will be dismissed and cannot be pursued further.

**(f)**   **Arbitration Decision: Unless the parties agree otherwise, the arbitrator will make a final and binding decision within 30 days after the hearing is closed.**  The final decision and the arbitration award, if any, shall be made consistent with the remedies available under the state or federal statute, common law, code or regulation that is the subject of the claim. Judgment on any award by the arbitrator may be entered into any court having jurisdiction over the claim and shall have the same legally binding effect as if the judgment had been rendered in such court.

    (1)   **The arbitrator's decision shall be rendered in writing, shall include a reasoned opinion necessary to support the arbitrator's decision and shall be signed by the arbitrator.**

    (2)   The arbitrator shall assess the AAA filing fee, arbitrator fees and expenses, and attorney's fees against a party upon a showing by the other party that the first party's claim is frivolous, or unreasonable, or factually or legally groundless.

    (3)   Except with respect to lawsuits or other proceedings seeking to enforce or vacate an arbitration award, all decisions rendered by an arbitrator under this Policy will be kept confidential by all parties.  An arbitrator's decision shall not serve as binding, legal precedent with respect to subsequent claims or disputes under this Policy.

    (4)   **An arbitrator's decision can be challenged in a state or federal court of law only on such basis as are available under the Federal Arbitration Act.**

©Copyright 2017 PartnerSource
Rev. 3/13/17

**ADDITIONAL INFORMATION**

**(a)  Interstate Commerce and Venue:**  The Employer is engaged in transactions involving interstate commerce (for example, purchasing goods and services from outside Texas which are shipped to Texas, or traveling on interstate roadways) and the Employee's employment involves such commerce.  Except as provided in this Policy, the Federal Arbitration Act shall govern the interpretation, enforcement, and all proceedings under the arbitration provisions of this Policy.  To the extent that the Federal Arbitration Act is not applicable, Texas common law shall apply.  Unless contrary to applicable law, any lawsuits seeking to enforce or vacate an arbitration award shall be brought in the United States District Court for the Northern District of Texas, Dallas Division.

**(b)  Binding Effect:**  This Policy for resolving claims by arbitration is equally binding upon, and applies to any such claims that may be brought by, an Employer and each Employee and his/her spouse, children, parents, beneficiaries, Representatives, executors, administrators, guardians, heirs or assigns (including, but not limited to, any survival or wrongful-death claim).  This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

(1)  This Policy applies to each Employee and the Employer without regard to whether they have completed and signed a Receipt and Safety Pledge form or similar written receipt. Adequate consideration for this Policy is represented by, among other things, eligibility for (and not necessarily any receipt of) benefits under this Plan and the fact that it is mutually binding on both the Employer and Employees. **Any actual payment of benefits under this Plan to or with respect to an Employee shall serve as further consideration for and represent the further agreement of such Employee to the provisions of this Policy.**  This Policy shall remain in effect with respect to the Employer and all Employees, without regard to any Employee refusal of benefits under this Plan, return of benefit payments under this Plan to an Employer, ineligibility for or cessation of benefits under this Plan in accordance with its terms, or any voluntary or involuntary termination of an Employee's employment with an Employer.

(2)  This Policy is not subject to ERISA requirements or otherwise dependent upon the benefit provisions of this Plan in any way, and is included herein strictly as a matter of convenience in documentation. This Plan and Policy also in no way changes the "at will" employment status of any Employee not covered by a collective bargaining agreement.

(3)  **If either party initiates a claim covered by this Policy by any means other than arbitration, the responding party shall be entitled to dismissal of such action, and the recovery of all costs and attorney's fees and expenses related to such action.**

©Copyright 2017 PartnerSource
Rev. 3/13/17

7

**(c)** **Amendment or Termination of Arbitration Policy:** The Company shall have the right and power at any time and from time to time to amend this Policy, in whole or in part, on behalf of Employer, and at any time to terminate this Policy or any Employer's participation hereunder; provided, however, that no such amendment or termination shall alter the arbitration requirements of this Policy with respect to an Injury occurring prior to the date of such amendment or termination. In addition, any such amendment or termination of this arbitration Policy shall not be effective until at least 14 days after written notice has been provided to Employees. Any such amendment or termination shall be pursuant to formal written action of a representative authorized to act on behalf of the Company.

**(d)** **Severability**. If one or more of the provisions in this Policy are deemed void by law, then the remaining provisions will continue in full force and effect.

©Copyright 2017 PartnerSource
Rev. 3/13/17

8

**APPENDIX B**

**COBRA CONTINUATION COVERAGE**

**NOTICE: The following general notice has been provided for purposes of complying with the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"). Please note, however, that group health benefits provided under the Plan are limited to treatment of injuries which are sustained during the Course and Scope of Employment with the Employer. Therefore, continuation of group health coverage would not be practical if a Participant experienced a termination of employment with the Company for whatever reason.**

**In addition, if a Participant has a covered Injury during his or her employment with the Employer, the Plan would continue to provide the Participant with health benefits for that Injury following his or her termination of employment (subject to the terms and limits in this Plan), unless such employment was terminated based upon gross misconduct. Therefore, termination of employment of employment in this situation would not be a "Qualifying Event" under COBRA because it does not result in a loss of coverage under the Plan.**

**Finally, the Plan does not provide coverage for dependents. Therefore, any continuation coverage provided under COBRA with respect to dependents would not be applicable to this Plan. To the extent that the Department of Labor, Internal Revenue Service or court of competent jurisdiction determines that the Employer is mandated by COBRA to provide continuation coverage under this Plan upon the occurrence of a "Qualifying Event" as described below, then no provision of the Plan will be construed to preclude offering COBRA continuation coverage.**

**Introduction**

You're getting this notice because you recently gained coverage under a group health plan (the Plan). This notice has important information about your right to COBRA continuation coverage, which is a temporary extension of coverage under the Plan. **This notice explains COBRA continuation coverage, when it may become available to you and your family, and what you need to do to protect your right to get it.** When you become eligible for COBRA, you may also become eligible for other coverage options that my cost less than COBRA continuation coverage.

The right to COBRA continuation coverage was created by a federal law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). COBRA continuation coverage can become available to you and other members of your family when group health coverage would otherwise end. For more information about your rights and obligations under the Plan and under federal law, you should review the Plan's Summary Plan Description or contact the Plan Administrator.

**You may have other options available to you when you lose group health coverage.** For example, you may be eligible to buy an individual plan through the Health Insurance Marketplace. By enrolling in coverage through the Marketplace, you may qualify for a 30-

© Copyright 2017 PartnerSource
Rev. 3/13/17

1

day special enrollment period for another group health plan for which you are eligible (such as a spouse's plan), even if that plan generally doesn't accept late enrollees.

**What COBRA continuation coverage?**

COBRA continuation coverage is a continuation of Plan coverage when it would otherwise end because of a life event.  This is also called a "qualifying event."  Specific qualifying events are listed later in this notice.  After a qualifying event, COBRA continuation coverage must be offered to each person who is a "qualified beneficiary."  You, your spouse, and your dependent children could become qualified beneficiaries if coverage under the Plan is lost because of the qualifying event.  Under the Plan, qualified beneficiaries who elect COBRA continuation coverage must pay for COBRA continuation coverage.

If you're an employee, you'll become a qualified beneficiary if you lose your coverage under the Plan because of the following qualifying events:

- Your hours of employment are reduced, or
- Your employment ends for any reason other than your gross misconduct.

If you're the spouse of an employee, you'll become a qualified beneficiary if you lose your coverage under the Plan because of the qualifying events:

- Your spouse dies;
- Your spouse's hours of employment are reduced;
- Your spouse's employment ends for any reason other than his or her gross misconduct;
- Your spouse becomes entitled to Medicare benefits (under Part A, Part B, or both); or
- You become divorced or legally separated from your spouse.

Your dependent children will become qualified beneficiaries if they lose coverage under the Plan because of the following qualifying events:

- The parent-employee dies;
- The parent-employee's hours of employment are reduced;
- The parent-employee's employment ends for any reason other than his or her gross misconduct;
- The parent-employee becomes entitled to Medicare benefits (Part A, Part, B, or both);
- The parents become divorced or legally separated; or
- The child stops being eligible for coverage under the Plan as a "dependent child."

**When is COBRA continuation coverage available?**

The Plan will offer COBRA continuation coverage to qualified beneficiaries only after the Plan Administrator has been notified that a qualifying event has occurred.  The employer must notify the Plan Administrator of the following qualifying events:

©Copyright 2017 PartnerSource
Rev. 3/13/17

2

- The end of employment or reduction of hours of employment;
- Death of the employee; or
- The employee's becoming entitled to Medicare benefits (under Part A, Part B, or both).

**For all other qualifying events (divorce or legal separation of the employee and spouse or a dependent child's losing eligibility for coverage as a dependent child), you must notify the Plan Administrator within 60 days after the qualifying event occurs.  You must provide this notice to:**

Costco Benefits Committee
Costco Wholesale Corporation
999 Lake Drive
Issaquah, Washington 98027

At that time, you will be informed of any required supporting documentation and the deadline for submitting this documentation.

**How is COBRA continuation coverage provided?**

Once the Plan Administrator receives notice that a qualifying event has occurred, COBRA continuation coverage will be offered to each of the qualified beneficiaries. Each qualified beneficiary will have an independent right to elect COBRA continuation coverage.  Covered employees may elect COBRA continuation coverage on behalf of their spouses, and parents may elect COBRA continuation coverage on behalf of their children.

COBRA continuation coverage is a temporary continuation of coverage that generally lasts for 18 months due to employment termination or reduction of hours of work. Certain qualifying events, or a second qualifying event during the initial period of coverage, may permit a beneficiary to receive a maximum of 36 months of coverage.

There are also ways in which this 18-month period of COBRA continuation coverage can be extended:

***Disability extension of 18-month period of COBRA continuation coverage***

If you or anyone in your family covered under the Plan is determined by Social Security to be disabled and you notify the Plan Administrator in a timely fashion, you and your entire family may be entitled to get up to an additional 11 months of COBRA continuation coverage, for a maximum of 29 months.  The disability would have to have started at some time before the 60th day of COBRA continuation coverage.  No later than the 60-day deadline specified above, you must mail your written notice and supporting documentation for your disability to:

©Copyright 2017 PartnerSource
Rev. 3/13/17

3

Costco Benefits Committee
Costco Wholesale Corporation
999 Lake Drive
Issaquah, Washington 98027

***Second qualifying event extension of 18-month period of continuation coverage***

If your family experiences another qualifying event during the 18 months of COBRA continuation coverage, the spouse and dependent children in your family can get up to 18 additional months of COBRA continuation coverage, for a maximum of 36 months, if the Plan is properly notified about the second qualifying event.  This extension may be available to the spouse and any dependent children getting COBRA continuation coverage if the employee or former employee dies; becomes entitled to Medicare benefits (under Part A, Part B, or both); gets divorced or legally separated; or if the dependent child stops being eligible under the Plan as a dependent child.  This extension is only available if the second qualifying event would have caused the spouse or dependent child to lose coverage under the Plan had the first qualifying event not occurred.

**Are there other coverage options besides COBRA Continuation Coverage?**

Yes.  Instead of enrolling in COBRA continuation coverage, there may be other coverage options for you and your family through the Health Insurance Marketplace, Medicaid, or other group health plan coverage options (such as a spouse's plan) through what is called a "special enrollment period."  Some of these options may cost less than COBRA continuation coverage.  You can learn more about many of these options at www.healthcare.gov.

**If you have questions**

Questions concerning your Plan or your COBRA continuation coverage rights should be addressed to the contract or contacts identified below.  For more information about your rights under the Employee Retirement Income Security Act (ERISA), including COBRA, the Patient Protection and Affordable Care Act, and other laws affecting group health plans, contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA) in your area or visit www.dol.gov/ebsa.  (Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's website.)  For more information about the Marketplace, visit www.HealthCare.gov.

**Keep your Plan informed of address changes**

To protect your family's rights, let the Plan Administrator know about any changes in the addresses of family members.  You should also keep a copy, for your records, of any notices you send to the Plan Administrator.

©Copyright 2017 PartnerSource
Rev. 3/13/17

**Plan contact information**

Costco Benefits Committee
Costco Wholesale Corporation
999 Lake Drive
Issaquah, Washington 98027
Telephone: (425) 313-8100

©Copyright 2017 PartnerSource
Rev. 3/13/17

5

**Este folleto y formulario contienen información importante sobre sus derechos. Si quiere el folleto y formulario en español, por favor comuníquese con el Costco Benefits Committee al (425) 313-8100.**

## <u>APPENDIX C</u>

## <u>RECEIPT, SAFETY PLEDGE AND ARBITRATION ACKNOWLEDGEMENT</u>

<u>**RECEIPT OF MATERIALS.**</u>  By my signature below, I acknowledge that I have received and read (or had the opportunity to read) the Summary Plan Description (the "SPD") for the Costco Wholesale Corporation Texas Injury Benefit Plan, updated effective March 13, 2017.

<u>**CONSENT TO ELECTRONIC DISCLOSURE OF DOCUMENTS AND NOTICES.**</u> I understand that my Employer is required to provide me with a copy of certain work-related information including a summary plan description and arbitration policy.  As a convenience, I may access these documents electronically through the Employer's website.  By signing below where indicated, I consent to electronic receipt of these materials, including any updates.  I understand that I may request a hard copy of the summary plan description and arbitration policy from a supervisor or manager, and that I may at any time provide a supervisor or manager with written withdrawal of this electronic consent.

<u>**INJURY NOTICE AND MEDICAL PROVIDERS.**</u>  I understand and agree that for an Injury due to an Accident, I must notify my supervisor or manager of the Injury within seven (7) calendar days from the date of the Accident. I further understand that in order to receive Plan benefits, I must also (1) receive any and all medical care from Plan-Approved Providers, and (2) receive my first medical treatment from an Approved Provider within 14 calendar days after the date I report the Accident and/or Injury.

<u>**SAFETY PLEDGE.**</u>  I agree to familiarize myself with the safety program for the Employer and to perform my job according to the general and departmental safety rules of the Employer.  I will also use any personal protective equipment that is provided to me.  I also agree to immediately report to my supervisor any accident that involves another employee, a customer, a vendor, or me.  I will also immediately report any unsafe act, condition or equipment.  I will also cooperate with any accident investigations, and actively participate in any Employer safety training programs.

<u>**ARBITRATION.**</u>  I also acknowledge that a mandatory employment policy is attached as an Appendix to the SPD for convenience of reference.  This policy requires that claims or disputes that (1) are covered under this employment policy, (2) cannot otherwise be resolved between the Employer and me, and (3) relate to an actual or alleged on-the-job injury must be submitted to an arbitrator rather than a judge or jury in court.  I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Employer at any time on or after March 13, 2017, I am accepting and agreeing to comply with these arbitration requirements.  I understand that the Employer is also accepting and agreeing to comply with these arbitration requirements.  All covered claims brought by my spouse, children, parents, beneficiaries, Representatives, executors, administrators, guardians, heirs or assigns are also subject to the Employer's arbitration policy, and any decision of an arbitrator will be final and binding on such persons and the Employer.  I understand that the arbitrator, and not a judge or jury, has the exclusive authority to resolve any dispute about the enforceability of this arbitration process.

X _____          _____
Employee's Signature                                                          Date

_____          _____
Print Employee's Name                                                      Employee's Identification Number

_____          _____
Parent or Legal Guardian Signature (if Employee under age 18)  Date

_____          _____
Print Parent or Legal Guardian Name                              Employee's Work Location or Department

**I AGREE TO RECEIVE WORK-RELATED**                    _____
**MATERIALS DISTRIUBTED ELECTRONICALLY**.          Employee's Signature for Electronic Consent

**\* In the event the Employer utilizes an online Receipt and Safety Pledge, such manner of acknowledgement shall be considered equivalent to signing this form.**

© Copyright 2017 PartnerSource
Rev. 3/13/17